RICHARD M. CARTER *v.* THE SECOND MUNICIPALITY OF NEW
ORLEANS.

Where, after the resignation of his appointment, an attorney who had been employed
at an annual salary, continues, with the approbation of his former clients, his at-
tention to the suits which originated during his term of office, and his services are
shown to have been useful to them, he may recover compensation therefor.

APPEAL from the Parish Court of New Orleans, *Maurian,* J.

GARLAND, J. The plaintiff claims $2550, for fees as counsel in
various suits in which the Municipality was interested. He ob-
tained a judgment for $2250, and the defendants have appealed.

It is in evidence, that the plaintiff was appointed the attorney
of the Municipality, on the 17th July, 1838, with a regular salary
of $1000 per annum. He resigned on the 25th June, 1839.
The suits in which the fees are charged, were commenced whilst
the plaintiff was acting as attorney of the defendants. On the re-
signation of the plaintiff, a successor was appointed ; but the
plaintiff continued to attend to the cases in question, in conjunction
with his successor and another member of the bar, who had been
employed to assist them. The plaintiff continued his attention to
the cases, until their final decision on appeal. It is proved, that
the Finance Committee of the Council of the Municipality, has a
general superintendence of the suits for, and against the corpora-
tion, and is the proper authority to receive communications from
the counsel about suits. The Comptroller and Chairman of the
the Finance Committee, testify to this fact. It is shown, that the
plaintiff, at different times, spoke and wrote to the officers of the
Municipality in relation to these suits, after the dissolution of his
official connection with it. The Comptroller, the Secretary of
the Council, the Chairman of the Finance Committee, and one or
more of the members testify, that they knew he was acting as
counsel in those cases. Communications in writing were re-
ceived, filed away, and some of them published. Bills for ex-
penses incurred in the suits, were paid on the certificate of the
plaintiff as to their correctness. When the suits were terminated,

the plaintiff reported the result of them to the Council, and no objection was made by any one. Caldwell, a member of the Council, says, that it was his understanding, that the plaintiff was continued as counsel in those suits, although there was no regular resolution to that effect. Peters, who was chairman of the Finance Committee, says, that the plaintiff reported to him, from time to time, the progress of the suits, and that they were of great importance to the defendants. He always thought the plaintiff entitled to compensation, and Caldwell is of the same opinion. The account of the plaintiff was presented to the Council for payment; an opposition was made, but not to the amount claimed, which was vetoed by the Mayor. There is other evidence which shows, that the officers of the corporation knew plaintiff was acting as counsel in the suits mentioned in his account, and no objection was ever made to his doing so. It is shown, that in the two suits with the Carrollton Bank, the defendants paid Mr. Eustis $2000, for his services, and that the Bank paid its counsel the same sum. Mr. Eustis says, he thinks the charge of $1000 by the plaintiff, a reasonable one. Mr. Hennen says, that he thinks the charge made for defending the suit of the New Orleans Navigation Company, a reasonable one. He was the counsel for the company, and knew what the plaintiff's services actually were. The fee in the suit for opening streets has been approved, and certified by the commissioners who superintended the whole matter; but as it is not shown, that these individuals had authority to act for the Corporation, or to bind them in respect to the employment of counsel or his compensation, we do not think that item is sufficiently established. The commissioners were not examined as witnesses; nor is the certificate given under oath, or any solemnity entitling it to judicial credence.

The defence is, that the plaintiff was the retained counsel of the Municipality, when all these suits originated. That it was his duty to attend to them. That after he resigned, it was no longer his duty to do so; nor were his services required, as his successor was competent to represent the interests of the Municipality; and that the Corporation did not know and sanction what plaintiff did in the premises.

It is very clear, that after plaintiff resigned his situation as the regular attorney of the Municipality, he was not bound to continue his attention to the suits originating during his term of office ; but he did so with the knowledge and approbation of his former clients. His services are shown to have been useful, and the defendants must compensate him for them. There is no doubt that the counsel, to whom were intrusted the interests of the Municipality after the plaintiff's resignation, were competent to defend them ; but it seems to have been understood, that he should continue to aid in the defence and prosecution of the suits. As to the knowledge of the defendants, as to what plaintiff was doing, the proof seems to us conclusive.

The judgment of the Parish Court is, therefore, annulled and reversed, and it is ordered and decreed, that the plaintiff recover of the Municipality No. 2, the sum of one thousand seven hundred and fifty dollars, with legal interest, and costs in the Parish Court, those in this court to be paid by the plaintiff and appellee.

*Benjamin*, for the plaintiff.

*Rawle*, for the appellants.