## ABBOTT v. HUNT.

(Filed December 20, 1901.)

1. FRAUDS, STATUTE OF—*Contract*—*Brokers.*

The statute of frauds does not apply to contracts by brokers and their principal for the sale of real estate.

2. BROKERS—*Principal*—*Contracts.*

Where no time is fixed for the continuance of a contract between a broker and his principal, either party may terminate it at will, subject only to the ordinary requirements of good faith.

ACTION by Abbott & Stephens against J. W. Hunt, heard by Judge *W. S. O'B. Robinson* and a jury, at March Term, 1901, of the Superior Court of MECKLENBURG County. From a judgment for the defendant, the plaintiffs appealed.

*Jones & Tillett,* for the plaintiffs.
*Burwell, Walker & Cansler,* for the defendant.

CLARK, J. In March, 1899, the defendant, who was the owner of certain real estate in Charlotte, agreed orally with

the plaintiffs, who were real estate agents and at that time in charge of said property as his rental agents, that they might sell it if they could secure a price that would net the defendant the sum of $33,000. The plaintiffs made effort to sell the property, and on 4th April telegraphed defendant an "offer of $32,000, subject to a commission of 2 per cent." This offer the defendant declined by letter, and added: "I prefer you do not offer it again, even at the price named, unless I can sell my residence. Sell the residence, then I will sell the business property." On 10th April the plaintiffs wrote defendant they had sold the property at $33,000 net, and he declined to ratify their action. His Honor below correctly held that the defendant's letter of 4th April terminated the agency.

The contract being denied in the answer, the defendant contends that it could not be proved by oral evidence, and that the plaintiffs are barred in any aspect by the Statute of Frauds in an action thereon—citing *Dunn v. Moore,* 38 N. C., 364; *McCracken v. McCracken,* 88 N. C., 272; *Kivett v. McKethan,* 90 N. C., 106. The plaintiffs were allowed to amend and allege a *quantum meruit,* but that did not improve their condition, for unless the services were rendered upon a valid agreement, they were officious and gratuitous. But we can not agree that the Statute of Frauds applies. This is not an action for specific performance, but on a contract for personal services, or for damages on breach of such contract for the value of the services.

But aside from that, an agency can be revoked at any time before a valid and binding contract, within the scope of the agency, has been made with a third party. The only exception is an agency coupled with an interest, and that must be an interest in the subject of the agency, and not merely something collateral, as commissions or compensation for making sale. Hartley's Appeal, 53 Pa. St., 212, 91 Am.

Dec., 207, which holds that a power of attorney by which the attorney is to receive as compensation "one-half of the net proceeds" is not a power coupled with an interest, and is revocable. This case cites a very clear enunciation of the same principle by Marshall, C. J., in *Hunt v. Rousmanier,* 8 Wheat., 174, which is also cited by this Court (as to agencies to solicit insurance) in *Insurance Co. v. Williams,* 91 N. C., 69. In *Brookshire v. Voncannon,* 28 N. C., 231, it is held that a power of attorney is revocable "at any moment before the actual execution of it." To same purport *Wilcox v. Ewing,* 141 U. S., 627; *Mansfield v. Mansfield,* 6 Conn., 559, 16 Am. Dec., 76; Mechem on Agency, sections 204-210; *Hall v. Gambrill,* 88 Fed. Rep., 709. In *Sibbald v. Iron Company,* 83 N. Y., 378, 22 Am. Rep., 441, it is said: "Where no time is fixed for the continuance of a contract between broker and principal, either party can terminate it at will, subject only to the ordinary requirements of good faith." A case on "all-fours" is *Coffin v. Landis,* 46 Pa. St., 426, which holds (page 434): "Where one as agent for another contracts to sell the land of the latter in consideration of one-half of the net proceeds of the sale, and there is no stipulation in the contract as to the duration of the employment, the principal has a right to terminate it at any time, and to discharge the agent from his service without notice, and the plaintiff (agent) can not recover for any services rendered, or for his loss of employment after his discharge." And almost as directly in point are the recent cases *Young v. Trainor,* 158 Ill., 428 (1895), which holds that "a real estate broker who produces a customer after his principal has withdrawn his offer to sell, is not entitled to a commission," and *Bailey v. Smith,* 103 Ala., 641 (1894), which is to the same effect, and *Mallonee v. Young,* 119 N. C., 549.

In *Sibbald v. Iron Co., supra,* the Court of Appeals of New York reviews the cases and states the law thus:

ABBOTT v. HUNT.

"It follows as a necessary deduction from the established rule, that a broker is never entitled to a commission for unsuccessful efforts. The risk of a failure is wholly his. The reward comes only with his success. That is the plain contract and contemplation of the parties. The broker may devote his time and labor, and expend his money with ever so much of devotion to the interest of his employer, and yet if he fails, if without effecting an agreement or acomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions. He loses the labor and effort which were staked upon success. And in such event it matters not that after his failure, and the termination of his agency, what he has done proves of use and benefit to the principal. In a multitude of cases that must necessarily result. He may have introduced to each other parties who otherwise would have never met; he may have created impressions, which under later and more favorable circumstances naturally lead to and materially assist in the consummation of a sale; he may have planted the very seed from which others reap the harvest; but all that gives him no claim. It was part of his risk that, failing himself, not successful in fulfilling his obligation, others might be left to some extent to avail themselves of the fruit of his labors."

In *Atkinson v. Pack,* 114 N. C., 597, and *Martin v. Holley,* 104 N. C., 36, the broker had procured a purchaser at the stipulated price before the revocation of the power, and, of course, being an executed contract, the agent was entitled to his commission, and the same might be true where the revocation was in bad faith, just as the contract was about being consummated, the revocation being for the purpose of depriving the agent of his commissions. But such is not the case here. There is no evidence tending to show it.

No Error.