## WILMINGTON v. BRYAN.

(Filed May 28, 1906).

*Municipal Corporations—Collection of Taxes—Employment of Counsel—Contracts—Power Coupled with an Interest—Termination — Irrevocable Contracts — Impairment of Contract by Repeal of Statute—Quantum Meruit—Revocation, What Constitutes.*

1. Where, under authority of chapter 182, Laws 1895, empowering the city of Wilmington to collect its arrearages of taxes, and making it the duty of the city attorney, together with such associate counsel as he might select, to bring actions against delinquent taxpayers, the then city attorney, associated other attorneys with himself for the collection of taxes, the contract for the collection of such taxes was one made with the city attorney, and not with his associates, and as such, terminated with the expiration of his term of office.

2. The employment of counsel to collect arrearages of taxes, under chapter 182, Laws 1895, without any duration (unless it was the term of office of the then encumbent as city attorney), and without limitation as to time, was, in law, a contract terminable at the will of either party.

3. Where back taxes were placed in the hands of the city attorney for collection under an ordinance ordering their collection, and that when collected "it shall be the duty of the city attorney to return the books and take a receipt therefor," there is nothing in the resolution carrying a property right or power coupled with an interest, or creating a perpetual and irrevocable contract, either with such city attorney or with one of his sub-agents.

4. A resolution providing that the city shall pay 10 per cent of all taxes collected without suit and 20 per cent of that collected by suit, does not confer any interest in the taxes, but is merely a method of measuring the compensation to be paid on that collected, so long as the authority to collect is unrevoked.

5. If the interest is in that which is produced by the exercise of the power, then it is not a power coupled with an interest.

6. Where, under chapter 182, Laws 1895, the city of Wilmington was given authority to collect its arrearages of taxes, and it was made the duty of the city attorney, together with such associate counsel as he might select, to bring actions against delinquent taxpayers, the relation sustained by an associate counsel to the city, was merely that of agent and when the statute was repealed he had no contract right which was impaired.

7. The board of aldermen of a city could not make a contract for the employment of legal services binding for an unlimited time and irrevocable by their successors.

8. Where a city attorney and his sub-agents, including defendant, were employed to collect back taxes, receiving a certain percentage of the taxes collected as compensation, defendant was not entitled on the termination of the contract, to recover on a *quantum meruit* for legal services in thereafter preparing claims for suit, for an obligation on an implied contract never arises when an express contract covers the same ground.

9. Where the employment of the defendant as an attorney to collect back taxes was under a contract at will and revocable, the action of the plaintiff in demanding its tax books from the defendant was a revocation and termination of the contract, and all collections made by the defendant thereafter were tortious and gratuitious.

WALKER and CONNOR, JJ., dissenting.

ACTION by the City of Wilmington against E. K. Bryan, heard by *Judge W. R. Allen,* at the October Term, 1905, of the Superior Court of NEW HANOVER, upon the referee's report. From a judgment for the defendant, the plaintiff appealed.

*Empie & Empie, J. D. Bellamy, Wm. J. Bellamy* and *Marsden Bellamy* for the plaintiff.

*Junius Davis, Rountree & Carr* and *H. McClammy* for the defendant.

CLARK, C. J. This is an action to recover $1,076.52 back taxes collected by the defendant after the revocation by the

plaintiff of his authority to collect the same, payment thereof having been demanded by the plaintiff and refused by the defendant. The answer admits the collection of the money, but sets up as a defense that the defendant had a continuing contract with the plaintiff which was to last till all the back taxes were collected, and sets up a counterclaim for $7,500 commissions on back taxes collected by the city attorney after the defendant's employment was revoked.

By chapter 182, Laws 1895, the city of Wilmington was given authority to collect its arrearages of taxes, and it was made the duty of the city attorney, together with such associate counsel as he might select, to bring such actions against delinquent taxpayers. This act was repealed. Laws 1897, chapter 517, ratified 9 March, 1897.

Under the authority of the Act of 1895, D. B. Sutton, then city attorney, associated the defendant and several other attorneys with himself for the collection of back taxes. By virtue of this association the defendant and others now claim an irrevocable contract with the city, even after the repeal of the statute and after the expiration of the term of Sutton, on whom as city attorney the duty was imposed to make the collection, with the aid of agents to be selected by him. C. P. Lockey succeeded D. B. Sutton as city attorney 4 April, 1898, and the board of aldermen turned over to him, as such city attorney, for collection, the back taxes for the years 1894, 5, 6 and 7, and on 25 April, 1898, passed the following resolution: "Resolved, The board of audit and finance concurring, that the city attorney be and he is hereby authorized, empowered and instructed to collect all taxes due the city for the years 1894, 5, 6 and 7, and to institute all actions in court that may be necessary to enforce the collection of such taxes. As compensation for making said collection, the city attorney may deduct and retain ten per cent of all moneys collected under this resolution.

"Resolved, further, That the city attorney be and he is

hereby directed and instructed to join and co-operate with the attorneys now in charge of the collection of the back taxes due the city for the years prior to 1894 upon such terms as may be agreed upon by him and said attorneys."

The board of audit and finance, 11 May, 1898, amended the said resolutions by changing the second paragraph of the first resolution to read as follows: "As compensation for making such collection, the city attorney shall be paid ten per cent of all moneys collected by him, which amounts so paid to the city attorney shall include all costs and expenses to the city of any kind whatsoever. The city attorney shall make weekly reports of all moneys collected and render his bill for his commissions and shall give bond in the sum of $5,000;" and as thus amended, adopted the aforesaid resolutions.

The defendant was one of the attorneys referred to in the second resolution and was accordingly associated by the city attorney with himself in making collections of said back taxes. T. W. Strange succeeded Lockey as city attorney and was himself succeeded in that office in 1899 by Iredell Meares, who, sometime after his election, made a demand upon the defendant for the tax books containing the back taxes due to the city prior to 1894. The defendant declined to surrender the same, claiming that he and his associates had an irrevocable contract for the collection of those taxes. The board of aldermen then passed a resolution directing the defendant and his associates to deliver to City Attorney Meares the said tax books, authorizing the said city attorney to collect said back taxes; and the board notified the defendant and his associates to proceed no further in the collection of taxes. The defendant again refused to surrender said books, claiming an irrevocable contract to collect the taxes, alleging ability and willingness to collect and averring that he would hold the city responsible for damages if he were stopped from proceeding further to col-

lect.  Afterwards, the said tax books were taken from the office of the defendant by said City Attorney Meares by direction of the city authorities and said city attorney and his successor in office have since that time been collecting said back taxes and have received the pay therefor.

The $1,076.52 demanded in the complaint is for back taxes which it was admitted were collected by him after Meares had become city attorney and had demanded the said tax books and had been refused, and this sum is held by him on the sole claim that the city is due him $7,500 as damages for refusing to permit him to continue the collection of the taxes.  It was agreed that if the defendant was entitled to any counterclaim at all for his alleged damages (which are for loss of commissions and the value of services in issuing writs and notices and preparing for further collections), the amount should be fixed at $4,000, from which should be deducted the $1,076.52 due the city, collected as aforesaid after the notice of the termination of his attorneyship, and for the recovery of which this action is brought.

So the whole question is simply narrowed down to one of law, whether the city had a right to terminate the authority it had given, under which the defendant was collecting the back taxes, or did the defendant hold a perpetual and irrevocable contract to collect the back taxes.

There was error, as pointed out by the plaintiff's exception 1 in that the judge found on the above facts as a conclusion of law that the plaintiff entered into a contract with "E. K. Bryan and his associates."  The facts show that the contract, if any, was made by the "board of aldermen with D. B. Sutton, as city attorney," and as such the contract terminated with the expiration of his term of office.

The court also erred in overruling the plaintiff's exceptions 2 and 8 to the referee's findings of law and in holding that the contract was a continuing one, when upon the facts found it was the employment of counsel to collect, without any du-

ration (unless it was the term of office of the then incumbent as city attorney), and being without limitation as to time, it was in law a contract terminable at the will of either party. *Abbott v. Hunt* 129 N. C., 403. The ordinance of 30 July, 1895, set out in the referee's report, under which the back taxes prior to 1894 were placed in the hands of Sutton, city attorney, to collect, simply ordered those taxes to be collected and that when collected "it shall be the duty of the *city attorney* to return the books and take a receipt therefor." There is nothing in that resolution carrying a property right, or power coupled with an interest, or creating a perpetual and irrevocable contract, with the then city attorney, who has long since passed out of office, as principal, and still less with the defendant as one of his sub-agents.

That a principal who appoints an agent, without limitation as to time, may revoke at any time, unless it is a power coupled with an interest, is elementary law. *Insurance Co. v. Williams,* 91 N. C., 69; *Ballard v. Ins. Co.,* 119 N. C., 187. The resolution providing that the city "shall pay ten per cent of all taxes collected without suit and twenty per cent of that collected by suit," does not confer any interest in the taxes, but is merely a method of measuring the compensation to be paid on that collected, so long as the authority to collect is unrevoked. *Missouri v. Walker,* 125 U. S., 339. If the interest is in that which is produced by the exercise of the power, then it is not a power coupled with an interest; *Abbott v. Hunt,* 129 N. C., 403, where the authorities are collected at page 405 and which is conclusive of this case; *Barr v. Schroeder,* 32 Colo., 609. "A mere power to collect money and receive property, the agent to have one-half of the net proceeds as compensation, is not a power coupled with an interest and is revocable." *Bancroft v. Ashhurst,* 2 Grant Cas., 513; *Blackstone v. Buttermore,* 53 Pa., 266. The relation which the defendant sustains to the

city was merely that of agent and when the statute was repealed he had no contract right which was impaired. *Mial v. Ellington,* 134 N. C., 131; *Missouri v. Walker, supra; Pennie v. Reis,* 132 U. S., 464. Nor could the board of aldermen make a contract for the employment of legal services binding for an unlimited time and irrevocable by their successors. Abbott Mun. Corp., sec. 259; *Wadsworth v. Concord,* 133 N. C., 587. That would be worse than the inconveniences and shackles from which we were happily freed by the decision in *Mial v. Ellington, supra.*

Nor is there any force in the defendant's claim of a *quantum meruit* for legal services in preparing claims for suit when his agency was terminated (and indeed the judgment in his favor seems based solely on the fees paid to Meares and Bellamy, the succeeding city attorneys, for the collections made by them), for an obligation on an implied contract never arises when an express contract covers the same ground. The plain terms of this employment were that the then city attorney and his sub-agents, including the defendant, would collect the back taxes, under their express contract to receive for the work ten per cent of taxes collected without suit and twenty per cent of the amount collected by law. This was the only compensation and bargain, and it is clear from the nature and terms of the contract that the same could be terminated at any time by either party, and it could not have been in contemplation that, in any event, it would last longer than the term of the principal agent, the city attorney, unless renewed with his successor, as each should come into office.

There was no contract for pay except for collection. The contract having been terminated rightfully and the only compensation being provided by express contract, there is no implied contract to exact any other or further payment for any other or further services. The express contract covers the entire ground and that was terminable at the will of either

party. *Abbott v. Hunt, supra.* The defendant knew the law and if he had wished other pay for incidental services in regard to collections not made at the termination of the employment, he should have stipulated therefor. The city attorneys have under authority of law made the subsequent collections of back taxes and the city has paid them the fees, some $4,000 (it is agreed) for such services. The defendant ought not to be paid by the city over again the same sum for having been willing to collect these cases, when we find that his claim of a right to do so is erroneous. And in no view of the case could this defendant have recovered in full for a demand which, if due at all, was recoverable by himself in common with several others.

The counterclaim set up cannot be sustained. The judge below having found as a fact in the judgment that the sum of $1,076.52, demanded by the plaintiff of the defendant, was collected by the defendant after Meares had been elected city attorney, and after the tax books had been demanded by the plaintiff from the defendant, which the defendant refused to surrender, the employment of the defendant being under a contract at will and revocable, the said action of the plaintiff in demanding the said books from the defendant was a revocation and a termination of the said contract, if any, with the defendant All collections made by the defendant thereafter were tortious and gratuitous, and the plaintiff is entitled to recover the aforesaid sum with interest from September 1, 1900, and costs. Judgment should be entered below in accordance with this opinion.

Reversed.


BROWN, J., concurring. I concur fully in all that is so well said in the opinion of the court in this case.

1. The contract which defendant claims has been violated by plaintiff, and for the breach of which defendant claims damages by way of counterclaim, was entered into by plaintiff

by legislative authority. Acts 1895, chap. 182. Without such act it had no power to make the contract, but must pursue the remedies provided in its charter for the collection of all taxes which had been levied for municipal purposes. *Gatling v. Commissioners,* 92 N. C., 540; Cooley on Taxation, pp. 15 and 16. When Sutton and his associates agreed with plaintiff to collect "back taxes" by suits at law under the act for a percentage of the collections actually made, they did so with full knowledge that such method of collecting plaintiff's taxes could be abolished at any moment by legislative will. They acquired no vested rights which could not be revoked. The power to levy, assess and collect taxes conferred by the legislative power of the State is a governmental function and cannot become the subject of vested rights. It is held at the pleasure of the legislative authority and it must necessarily follow that the repeal of the law by the supreme legislative power, by which the right to collect taxes by means of suits at law is destroyed, will not make the municipality, liable to attorneys employed solely upon a commission basis, for damages for an alleged breach of the contract of employment. They accepted employment upon the express condition that their fees should be dependent solely upon their collections and with full knowledge that the continuance of the contract must terminate if the act should be repealed. There is no right of property in the remedy for the collection of taxes given to the city which is not entirely under the control of the Legislature. Cooley Const. Lim., p. 125; *Gatling v. Commissioners, supra.* Sutton and his associates could acquire no property rights in the collection of taxes or in the city tax book. *Wallace v. Trustees,* 84 N. C., 164. When the Act of 1895 was repealed by the Legislature of 1897, chap. 517, the so-called contract was annulled, not by the plaintiff, but by the supreme legislative power. If it was annulled at the time when Sutton and his associates had made preparations to bring suits

WILMINGTON v. BRYAN.

and had issued summons and filed complaints, it is their misfortune, nor the fault of the plaintiff. Their compensation would be that which they had received already as commissions in the general collection of back taxes under the agreement, which appears to have been no inconsiderable sum. If they continued to sue after the repeal of the act, it was their folly. If they have any other grievance, they must look to the Legislature for redress. The contract which an attorney may make with an individual or a private corporation for the collection of debts, or other personal services, has no relation to a contract for the collection of taxes. It stands upon a different footing and is not so entirely subject to legislative control.

2. If there were any legal merits in the counterclaim for damages for breach of contract, it could not be pleaded as against a demand for the $1,076.52 tax money collected by the defendant and in his hands. No counterclaim is valid against a demand for taxes. *Gatling v. Commissioners, supra,* This must likewise be true when the fund sought to be recovered is the proceeds of the city tax lists in defendant's hands for collection. "No set-off can be made to tax money while on the way from the taxpayer to the treasurer of the town or city imposing the tax." *Waterbury v. Lawler,* 51 Conn., 171; Waterman on Counterclaim, sec. 38; *Wilson v. Lewiston,* 1 W. & Seg't., 428; *Com. v. Rodes,* 5 Mon., 318. If the defendant had any cause of action, his remedy would be by original suit against plaintiff in case the authorities refused to recognize his demand.

WALKER, J., dissenting: It will be necessary, in order to have a clear and full understanding of this case, to state the material facts. The plaintiff sued to recover the sum of $1,076.52, which it alleged the defendant, claiming to act as attorney for the plaintiff, had collected in suits against divers persons who were delinquent taxpayers and owed the city that amount for "back taxes." The defendant in

his answer averred that he was employed by the city to collect all the taxes due to it for the years prior to 1897 and under two separate contracts, by which the city agreed to pay the defendant 10 per cent on amounts collected without suit and 20 per cent on amounts collected by suit, as to all taxes due prior to 1894, and 10 per cent (free of cost and expenses to the city) on all taxes due since that year. That the city was expressly authorized by the Act of 1895, chap. 182, to make the contract with the defendant through its then city attorney, if any statutory authority was required, and that defendant collected a large amount of said taxes ($39,000) for which he received his commissions, and, in addition, the said sum of $1,076.52, and also another sum for which he had not received his commissions, they amounting to $300. That he had also brought a large number of suits, after carefully compiling the facts and investigating the legal questions involved as to the right of the city to collect back taxes, and that he bestowed great labor and gave much of his time and attention to the work of preparation for the trials of those suits. That he prepared and filed pleadings, prosecuted cases and brought two of them by appeal to this court. That a considerable portion of the money received by him as commissions on amounts actually collected was expended in performing the work of collecting the other taxes, which taxes amounted in all to $100,000, and of this sum at least $60,000 could have been collected. That the city in the year 1899, without his consent, took the tax books from the defendant and cancelled the contract, instructing him not to proceed any further with the collection of taxes. That the city has availed itself of the labor performed and professional services rendered by the defendant and has settled some of the suits he instituted, and has generally received the benefit of what he had done in the way of preparation for collecting taxes up to the time it cancelled the contract and refused to permit the defendant to proceed any further in the perform-

ance of his part of the agreement, he being at all times able, ready and willing to carry out the contract on his part. That his services so rendered and for which he has received no compensation were worth $4,000. There were two counterclaims stated in the answer, one for breach of the contract, in which the defendant sought to recover the compensation fixed by the agreement, or damages for the breach to be measured by such compensation, and the other in which he sought to recover, as upon a *quantum meruit,* the reasonable value of his services. The case by consent of the parties was referred, and the referee reported his findings of fact and conclusions of law. It appeared from the report that the defendant was by agreement associated with the city attorney in the collection of back taxes, and that the latter by resolution of the board of aldermen, concurred in by the board of audit and finance, was required to report weekly all moneys collected by him for back taxes and render a bill for his commissions and give a bond in the sum of $5,000. The board of audit and finance, which was created by chapter 143, Laws 1876-77, had full knowledge of the terms of the two contracts with the defendant, and in May, 1897, approved and ratified them by joining the aldermen in a resolution to that effect. That reports of taxes collected by the attorneys were made to the city authorities and bills rendered for commissions were passed by the aldermen, approved by the board of audit and finance, and paid, except the commission of $100 on one claim and the commission on the $1,076.52, which amounts to $215. The referee further finds that the compensation fixed by the contracts was fair and reasonable, and that the defendant in all things faithfully performed the contracts on his part and was ready and willing to fully perform the same, and further that the city reaped the benefit of his labors and the expenses incurred by him in preparing for and bringing the suits, which were considerable, and for which he had received no compensation, and that some of the suits

are still pending. That after the discharge of the defendant and the substitution of other attorneys successively in his place, the latter collected $56,000 of back taxes. The referee further finds that the city authorities were kept well informed by Judge Bryan of the collections and the commissions charged, and not only ratified, approved and paid the same, but at all times recognized and dealt with him and his associates as the duly employed attorneys for the collection of said taxes upon the terms and for the compensation agreed upon, and already stated. The referee reports the following agreement as having been made by the parties with his consent: "It is agreed that if the defendant is entitled to recover upon his counterclaim, he will be entitled to recover $4,000, without interest, of which the sum of $1,076.52, which is already in his hands, shall form a part without interest." The referee held as his conclusion of law that the city had made a valid and binding contract with the defendant and was liable for the breach thereof by it, the amount fixed by the agreement of the parties being the measure of the damages he is entitled to recover, and he recommended that judgment be entered for that sum. The plaintiff filed numerous exceptions to the referee's findings of fact, which were overruled by the court and need not be considered, as we cannot review the court's ruling. It also excepted to the conclusions of law in several particulars. The court found an additional fact, from the admissions of the parties, that the defendant collected the $1,076.52 after Mr. Meares, his successor, had been appointed and after the plaintiff had made demand for the tax books, and that the defendant's successors had continued the collection of back taxes included in the defendant's contract and had received from the plaintiff, as commissions, more than $4,000. The court thereupon confirmed the report and adjudged that the defendant recover of the plaintiff $2,923.47 (that is $4,000 less $1,076.53) and his costs. The plaintiff excepted and appealed.

The plaintiff resists the defendant's counterclaim upon three grounds: 1. That a set-off or counterclaim cannot be asserted against a demand for taxes due to the plaintiff and collected by the defendant. 2. That the defendant's contract with the plaintiff was not approved by the board of audit and finance, as required by the Act of 1876-77, chap. 143, sec. 8. 3. That the Act of 1895, chap. 182, was repealed by the Act of 1897, chap. 517, and thereby the power to collect back taxes was revoked and consequently the plaintiff had the right to annul the contract with the defendant and discharge him. These contentions will be considered in the order stated:

*First*—The position that the defendant cannot set up a counterclaim in this case because it is brought for the recovery of taxes is not tenable. It is true that neither a taxpayer nor a sheriff can plead a set-off in a suit against him for taxes due and owing. *Cobb v. Elizabeth City,* 75 N. C., 1; *Battle v. Thompson,* 65 N. C., 406; *Gatling v. Commissioners,* 92 N. C., 536; *State & Guilford Co. v. Georgia Company,* 112 N. C., 34. The reason why this cannot be done in the cases put is well explained by *Clark, J.,* in the last cited case, but that reason is not at all pertinent to a case like this. A tax, while considered as a debt for some purposes, that is, as a thing due and therefore collectible, is generally regarded as an impost and is not liable to set-off by the taxpayer or even by an officer of the law appointed to collect it. This is so upon the ground of public policy. To permit a taxpayer, or an officer charged with the collection of taxes, to set up an opposing claim against the State or a city might seriously embarrass the government in its financial operations by delaying the collection of taxes to pay current expenses. It has generally been held that a tax is not a debt in the sense that it will admit of a set-off. *State, etc., v. Georgia Co., supra.* But in this case the defendant was neither a taxpayer nor an officer, and the principle forbidding

a counterclaim or set-off should not have any application here. In *Battle v. Thompson, supra, Pearson,* C. J. (seeming to have just such a case as ours in his mind), says: "When the defendant's claim falls under clause 1, section 101, C. C. P., and arises out of the contract or is connected with the subject of the action, it may be that the defense may be made against the State, and the claim be allowed in diminution of the amount to be recovered, or to prevent a judgment in favor of the State when the claim is equal to or in excess of the demand of the State; but it would be on the ground that the claim is in the nature of a payment or a credit, to which the defendant is entitled, and that the demand of the State is in fact only for the balance." The reason why it was said the claim could be used only as a set-off or treated as a payment was that *Battle v. Thompson* was a suit by the State, and, as said by *Judge Pearson,* the latter could not be sued so as to be subject to a judgment upon a crossclaim, but this reason does not apply here, as a municipal corporation can be sued. Judge Bryan was employed under a definite contract as an attorney to collect taxes due to the city and did not sustain any kind of official relation to it, but only a contractual one. *Hall v. Wisconsin,* 103 U. S., 5. As an attorney he had the right of retainer and a lien in respect of funds collected, so far as necessary to satisfy his claim for services rendered in the particular transactions which are covered by the terms of his employment (Weeks on Attorneys, 614,) and no valid reason can be assigned for his being deprived of his rights as an attorney in this kind of a case. *Missouri v. Walker,* 125 U. S., 339. Besides, the agreement of the parties sufficiently disposes of this objection. Why should we undertake to make the parties do what they have agreed should not be done? They wished to end the litigation, if the court held that the defendant had a good cause of action against the city, by reason of the facts alleged in the counterclaim, either on the special contract or on a

*quantum meruit.* Why, they said, prolong litigation use-
lessly? In this spirit they entered into that agreement and
provided that if the defendant is entitled to recover at all,
the amount shall be fixed at $4,000, "of which sum
$1,076.53, which is already in his hands, shall form a part."
Where is there any room for doubt as to the meaning of this
agreement? The parties desired their substantial rights
determined, divested of all technicalities, and wanted the
final decision made in this case. This is in accordance with
the spirit of the Code. In their brief, the plaintiff's coun-
sel lay little or no stress upon this position, but with their
usual frankness they admit that the case depends mainly
upon the validity of the repealing act of 1897 and its legal
effect upon the defendant's contractual rights as against the
city. But there is another conclusive answer to this conten-
tion. If there had been no agreement, and it be true that
the counterclaim cannot be used as a set-off, *pro tanto,* and so
that the defendant can have judgment for the excess, the re-
sult will be that the plaintiff is entitled to judgment against
the defendant for the amount of its claim and to execution
thereon. But this would not prevent the defendant from
having judgment for the amount of his demand, treated as
an independent claim existing at the commencement of the
action, the same as if he had brought a separate action there-
for, provided the plaintiff is liable to him. Code, section 249,
Revisal, section 558. This would satisfy the principle that
a set-off is not pleadable to an action for the recovery of the
tax, as the plaintiff (the city) could have its judgment and
execution, if it so desired, and the defendant a separate
judgment for his counterclaim. Clark's Code, sec. 424 (3)
and sec. 244. Indeed the Code provides that a plaintiff
may take judgment for the excess of his claim over the
defendant's counterclaim—Clark's Code, sec. 385 (2)—but
does not expressly make any such provision in favor of the
defendant when his counterclaim exceeds in amount the

plaintiff's demand (Code, sec. 249, Revisal, sec. 558), and seems to contemplate that there may be separate judgments. But however this may be, the parties could waive this formality and agree, as they have done, that there should be one judgment for the excess, as in the case where the plaintiff's demand exceeds in amount that of the defendant, and thus conform the procedure to the true spirit of the Code system, that all controversies should be settled in one action and as far as possible by one judgment, and also to the actual practice in the courts. Why should we defeat the purpose of this reasonable agreement by giving it a strained construction or by reasoning merely technical? It all comes to this, that if there had been no agreement and the defendant cannot use his cross demand as a set-off against the plaintiff's claim for taxes so as to extinguish it, he may have judgment upon his counterclaim as an independent cause of action existing when the action was commenced (Code, sec. 249, Revisal, sec. 558), and the plaintiff's remedy becomes thereby unobstructed. But the agreement affords an easy way of settling the whole controversy once for all. Why turn the defendant out of court and require him to bring a separate action for his money, when the result will ultimately be the same? To do so would accord with the old procedure, but not with the new.

*Second*—If it was essential to the validity of the contract that the board of audit and finance should have approved it, there are facts found by the referee which appear to show conclusively that said board, in conjunction with the board of aldermen, approved and ratified the contract with full knowledge of the facts, and by reason thereof the defendant was induced to proceed with the collection of the unpaid taxes. 20 Enc. of Law, p. 1182; *Supervisors v. Schenck,* 5 Wall., 772. *Chief Justice Shaw,* in *Crenshaw v. City of Roxbury,* 73 Mass. (7 Gray), 374, said: "The mayor being the chief executive officer of the city, and

issuing the advertisement in his official capacity, professed to act for the city; and although, from want of sufficient authority, his act did not bind them, yet, being done in their behalf, if the city afterwards, by the city council, who had authority to do the act, with full knowledge of what the mayor had done, ratified it, the city was bound by it. Subsequent ratification by the principal gives the act of the agent the same effect as if it had been done by a previous authority. Of course it relates to the time of the act done, and gives it effect from that time." *Cotton Mills v. Commissioners,* 108 N. C., 695. But the Act of 1895, chap. 182, sec. 2, not only authorizes, but makes it the duty of the city attorney to employ counsel to assist him in bringing suit to recover the taxes, and expressly directs that such counsel shall receive reasonable compensation. Here is full and adequate provision for the making of this very contract without any board's approval or consent. By the Code, section 683, it was once required that, "Every contract of a corporation, by which a liability may be incurred exceeding one hundred dollars, shall be in writing, and either under the common seal of the corporation or signed by some officer of the company authorized thereto." Construing and applying this statute in *Roberts v. Woodworking Co.,* 111 N. C., 432, this court held that although the company's contract was *ultra vires,* it not having been made as the statute required, the plaintiff could recover the value of work and labor done and materials furnished under the contract upon a *quantum meruit;* but could not recover upon the contract itself. To the same effect is *Curtis v. Piedmont Co.,* 109 N. C., 401, and in the latter case it was said that the statute (Code, sec. 683,) should have been specially pleaded. This objection of the plaintiff is also answered by what will hereafter be said.

*Third*—The plaintiff further contends that the authority of the city to make the contract with the defendant was

given by the Act of 1895, and as the latter act was repealed by the Act of 1897, the authority has thereby been revoked, but the defendant replies that the repeal of the act could not have the effect to annul a contract already made under and by virtue of its provision or to impair any of the defendant's contractual rights. It is needless to inquire which of the two positions is the correct one, as the recovery of the defendant can be sustained without reference to the special contract. The principle already stated and supported by authority, showing a ratification of the contract or a sufficient approval by the board of audit, should perhaps require serious consideration, even if the only basis of defendant's right to judgment upon his counterclaim is the contract itself, but such is not the case. If the contract is not in force for any of the reasons assigned by the plaintiff, it cannot escape lia·bility if it has accepted and retained the benefit of the services rendered and the money advanced by the defendant. It would produce an inequitable result to hold otherwise. "If a party has performed a part of the contract, and some fact has arisen which discharges or excuses him from further performance, he may have reasonable compensation for what he has done under the contract. Thus if a contract contains a term reserving a right of cancellation to one party, and such right is exercised, the adversary party may recover a reasonable compensation for the work which he has done under the contract." 3 Page Cont., sec. 1598. A perusal of the section just cited will show the extreme length to which the law has been carried in favor of a fair remuneration to a party who has performed work and labor under a contract afterwards revoked. Some of the courts have even held that if a party himself had the right of cancellation, which he exercised in a fair and reasonable manner, he may recover the value of services rendered while the contract was existing. *Ibid.* In *Pickett v. School District,* 25 Wis., 551, the contract being voidable, it was held that the thing contracted

for being in itself lawful and beneficial, it would be unjust to allow a party to retain the benefit without any compensation at all. When, therefore, the contract had not been fully executed, but only partially fulfilled, the party accepting and availing himself of the partial benefit, would become liable on a *quantum meruit* upon the same principle as in other cases. Many other decisions can be cited showing the application of the principle to a variety of cases, where the contract is either void, voidable or subject to cancellation or revocation, the general result being that the value of the services may be recovered, even where the contract is rightfully cancelled and especially if the party claiming the right to recover is without fault. *Booth v. Ratcliffe,* 107 N. C., 6; *Roberts v. Woodworking Co., supra; Curtis v. Piedmont Co., supra; Smith v. Stewart,* 83 N. C., 408; *King v. Brown,* 2 Hill (N. Y.), 485; *Barr v. Van Duyn,* 45 Iowa, 228; *Cox v. McLaughlin,* 76 California, 60. The doctrine has been applied to contracts of attorneys. 3 A. & E. Enc. (2 Ed.), 430; *Baird v. Ratcliffe,* 10 ·Texas, 81; *Carter v. New Orleans,* 5 Rob., 238. "If the special agreement (of attorney and client) is rescinded, or is void for champerty, the attorney may recover on a *quantum meruit* for his services." Weeks on Attorneys, sec. 345. This author also says generally that an attorney who is discharged by his client without any fault on his part is entitled to recover the value of services rendered, and it would seem, he says, that because of the confidential nature of the relation of attorney and client and the inability of the former to appear for the other side after his discharge and the consequent loss of business, the attorney should be permitted to recover the full amount of the fee, especially if he kept himself in constant readiness to perform his part of the contract by a continuing tender of his services. Weeks on Attorneys, sec. 366. See also *Morgan v. Roberts,* 38 Ill., 65; *Myers v. Crockett,* 14 Texas, 257; *Wilhelm v. Cedar Co.,* 50 Iowa, 254; *Kersey v. Garton,*

77 Mo., 645; *Moyer v. Cantieny,* 41 Minn., 242; *Bright v. Taylor,* 36 Tenn. (4 Sneed), 159. "There can be no doubt," it is said in a well considered case, "that it was within the scope of the authority of the city to contract upon the subject. There is nothing of illegality in the contract, such as requires that it should be held void in the whole—the part performed as well as that not performed; and what the city has received and enjoyed the benefit of, under the contract, there is no principle of law which will justify it in its refusal to pay for." *E. St. Louis v. E. St. L. G. L. & D. Co.,* 98 Ill., 427. "A general rule," says Parsons, "has, however, been asserted which certainly rests upon reason and justice. It is, that where a party has accepted and made his own the benefits of a contract, he has estopped himself from denying in the courts the validity of the instrument by which those benefits came to him." 2 Parsons on Contracts (8 Ed.), 790. But in *Shipman v. State,* 42 Wis., 377, the very question here presented was decided. In that case the plaintiff was employed to prepare plans for the building of a hospital and to superintend its construction for 5 per cent on the cost of it, under the provisions of an act of the Legislature, which expressly reserved the right to the commissioners to discharge the building superintendent at their discretion and at any time. The plaintiff was discharged before the completion of the work, and it was held that notwithstanding the reserved power to discharge him, he was entitled to recover at least the value of his services as upon a *quantum meruit.* It is therefore a mistake to suppose that the repeal of the Act of 1895 has anything to do with the right of the defendant to recover on his counterclaim. The city could still collect back taxes by appropriate methods and procedure *(Guilford Co. v. Ga Co., supra),* and had the power to employ an attorney for that purpose (20 Am. & Eng. Enc., 2 Ed., 1159), and having this authority it could, of course, continue in its service an attorney already retained by it. The city was not, therefore, as contended, without a full and sufficient

remedy for the collection of the taxes due to it and did not lose its right to collect them by the repeal of the act, as has been shown. *Guilford Co. v. Ga. Co., supra.* But if it did lose the power by the repeal of the act it must pay for what had already been done and restore the money advanced.

Recurring to the main question, the right to recover on a *quantum meruit* when the contract has been terminated without the fault of the plaintiff, is generally allowed for the purpose of preventing the unjust enrichment of the defendant and not solely for the purpose of awarding damages for the breach of any contractual duty. When the plaintiff has expended money or labor with a resultant loss to him and a gain to the defendant, and in the expectation that he would be permitted ultimately to reap his reward under the contract, which expectation has been frustrated by even the lawful act of the defendant, it is against conscience that the latter should be enriched by a benefit thus acquired at the expense and to the injury of the plaintiff. The obligation to pay may therefore be deemed an equitable as distinguished from a legal one and rest on principles independent of the law of contract. Keener on Quasi Contracts, 214. This court has applied the same equitable principle in the case of contracts void under the statute of frauds. The refusal of the party to perform the contract is in a legal sense rightful, for he merely exercises an admitted power to avoid the contract and is not therefore in fault, but equity and fair dealing require him to pay for the benefit he has received from labor performed while the contract was in force. *Albea v. Griffin,* 22 N. C., 9; *Tucker v. Markland,* 101 N. C., 426, and cases cited. In *Albea v. Griffin, Judge Gaston* says: "The plaintiff's labor and money have been expended on improving property which the ancestor of the defendants encouraged him to expect should become his own, and by the caprice of the defendant, this expectation has been frustrated. The consequence is a loss to him and a gain to them. It is against conscience that they should be enriched by gains thus ac-

quired to his injury. If they repudiate the contract, which they have a right to do, they must not take the improved property from the plaintiff without compensation for the additional value which these improvements have conferred upon the property." It may well be doubted if the city had the legal right to cancel the contract, as notwithstanding the repeal of the Act of 1895, it still had the authority to collect back taxes. If it wrongfully broke the contract, it was clearly liable to the defendant.

But the defendant is entitled to recover on another ground. He was not a public officer whose office could be abolished at will. His relations with the city were wholly contractual, as much so as would be those of any other person who makes a contract with the city for work and labor to be performed. This view is sustained by the highest authority, the Supreme Court of the United States, and not only so, but that court has decided that such a contract is protected by the clause of the Federal Constitution against impairing the obligation of a contract. In *Hall v. Wisconsin,* 103 U. S., 5, it is held that although an office is an employment, it does not follow that every employment is an office. *(U. S. v. Maurice,* 2 Brock, 96). A man may certainly be employed under a contract, express or implied, to perform a service without becoming an officer, and when a contract is made between the State and a party, whereby he is to do certain work or to perform certain duties at a stipulated compensation, he is entitled to be paid for the service actually rendered at the contract rate, whatever it may be, although before the expiration of the period the State repealed the statute pursuant to which the contract was made. In that case, Hall, the plaintiff in error, who occupied the same position as does Judge Bryan in this case, and who was asserting a similar claim, was employed as an attorney at law to perform professional services. The court emphasizes the distinction between official and contractual employment, and says: "In a sound view

of the subject, it seems to us that the legal position of the plaintiff in error was not materially different from that of parties who, pursuant to law, enter into stipulations limited in point of time, with a State, for the erection, alteration or repair of public buildings, or to supply the officers or employees who occupy them with fuel, light, stationery, and other things necessary for the public service. The same reasoning is applicable to the countless employees in the same way, under the national government. It would be a novel and startling doctrine to all these classes of persons that the government might discard them at pleasure, because their respective employments were public offices, and hence without the protection of contract rights." It is further said that when the State descends from the plane of its sovereignty, and contracts with private persons, it is regarded *pro hac vice* as a private person itself, and is bound accordingly, and the same rules are applied to it as to private persons. See also *Davis v. Gray,* 16 Wallace, 203. The same principle was asserted in *Stewart v. Jefferson Police Jury,* 116 U. S., 131, where an attorney had been employed to render certain professional services to the parish of Jefferson, a municipality. The court there says that where services are performed under a law, resolution or ordinance which fixes the rate of compensation there arises an implied promise to pay for those services and this implied contract is as complete as an express one. "Its obligation is perfect, and rests on the remedies which the law then gives for its enforcement. The vice of the argument of the Supreme Court of Louisiana is in limiting the protecting power of the constitutional provision against impairing the obligation of contracts, to specific agreements, and in rejecting that much larger class in which one party having delivered property, paid money, rendered service, or suffered loss at the request of or for the use of another, the law completes the contract by implying an obligation on the part of the latter to make compensation. This

obligation can no more be impaired by a law of the State than that arising on a promissory note." 116 U. S., 134. The court affirms the same doctrine in *Auffmordt v. Hedden,* 137 U. S., 310, and says that such an employment, simply because it arises out of a contract with the government, is not for that reason an office—it is still contractual, having none of the elements of an office such as tenure, duration, continuing emolument or continuous duties, and being such it is entitled to the protection of the Constitution. In all of these cases, the court fully recognizes the doctrine laid down by this court in *Mial v. Ellington,* 134 N. C., 131. This case has no feature in common with that one. Nor is the right of the aldermen to make a contract extending beyond their term involved in this case. That question was not passed upon or involved in *Wadsworth v. Concord,* 133 N. C., 587. It was mentioned only in the opinions of the concurring judges. The contract here was to render a certain service, single in its nature and for a fixed compensation, and, besides, I am not disputing the *power* of the aldermen to discharge Judge Bryan. They could do so, as any client may discharge his attorney, but if they do, law, equity and common fairness require that they should pay for the benefit received or of which they have chosen to avail themselves. Even if the other question could be involved, aldermen cannot take the benefit of services already rendered and plead the right to discharge the person who performed them in bar of a suit to recover his just compensation. That is contrary to sound morality as well as to settled principles of law. It may be further said, that the aldermen were expressly authorized by statute to make this very contract, and the mere fact that its performance might extend beyond their term can make no difference, and, as I have shown by cases, binding upon us as authorities, the Legislature by a repeal of the statute could not take away the right to recover for services already rendered, even if the discharge was effectual.

Cases sustaining my view and directly in point, as I think, are *Lord v. Thomas,* 64 N. Y., 107; *Danolds v. State,* 89 N. Y., 36; *Cadman v. Markle,* 76 Mich., 448; *Davis v. Com.,* 14 Mass., 241; *Comp. Co. v. Comp. Co.,* 70 Miss., 669; Keener on Quasi Contracts, p. 277, sec. 2. In *Danolds v. State, supra,* the principle is thus stated: "Where a valid contract has been entered into, on behalf of the State by its duly authorized agents, for the construction of a public work, it cannot, in the absence of any stipulation authorizing it so to do, destroy or avoid the obligation of the contract. While it may refuse to perform and arrest performance on the part of the contractor, it is liable for the breach of the contract the same as an individual, and the contractor is entitled to claim prospective profits. The constitutional provision which denies to the State the power to pass laws impairing the obligations of contracts applies as well to contracts made by the State as to those made by individuals." In *City of Wilmington v. Stolter,* 122 N. C., 395, a case very much in point, this court held that the repeal of the Act of 1895 did not affect pending proceedings for the collection of taxes, nor did the resignation of the city attorney affect the right of his associates (Judge Bryan being one of them), to continue as counsel and it, therefore, follows necessarily that they had the right to be compensated for services rendered either under the express or the implied contract.

The case of *Abbott v. Hunt,* 129 N. C., 403, and decisions of a like kind are not applicable to the facts of this case. The mere fact that Judge Bryan was an attorney at law does not prove that he was acting under a power as a real estate broker does. He made a contract with the city to do a specific piece of work at a stipulated price. He was acting, not under any power, but under a binding contract. A power of the kind that Abbott had could be revoked, and so may a person break his contract and practically revoke it. He has the

power to do so, but not the right. It is true he cannot be made to perform it unless it is of such a nature that a court of equity can compel specific performance, but when he breaks it the law will require him to make full restitution by paying damages as a compensation for the wrong, and the party injured may sue either upon the express contract or, treating that as rescinded, upon a *quantum meruit.* The right to these damages is based upon a contract created by law in order to do justice between the parties. The doctrine that the existence of an express contract prevents recovery upon an implied one does not apply, as the breach by one party entitles the other to treat the express contract as rescinded and then arises his right created by law to recover for the benefit conferred by what he has done under the contract. Clark on Contracts, 693 and 694. At page 695 it is said: "The existence of the special contract in these cases which has been rescinded precludes the implication of any other contract in fact. The obligation, therefore, is necessarily imposed by law." This is familiar and elementary learning. The contracts of attorneys come within the operation of this rule. There is no *honorarium* under our law as there was under the civil law. The services of an attorney are not gratuitous, but are to be paid for like services rendered in any other calling or profession and his contracts are governed by the same principles as ordinary contracts for service. He may recover on an express contract, or on a *quantum meruit* when the express contract is broken or rescinded. The mere fact that he is called an attorney does not imply in the least that he acts under a power in the sense that his agreements with others may be revoked at will. His relation with his client is created by contract and his rights are therefore contractual.

In this case, it appears by the report of the referee, and the opinion of the majority concedes, that the city has deliberately availed itself of the services rendered by Judge Bryan

and it is gravely argued that it should not be required to pay for them, and the position is attempted to be sustained, in part at least, upon the ground that it has since paid some one else for the identical services. Surely this does not acquit the city of liability. If the wrong person has been paid, the one rightfully entitled to the money should not be made to suffer for the mistake.

It can make no difference in the conclusion to be reached upon what ground the referee or His Honor decided the case, whether upon the idea that there had been a breach of the contract or that the defendant was entitled to recover for the value of his services or for the value of the benefit conferred upon the plaintiff as upon a *quantum meruit*. The referee has found the facts, which finding is equivalent to a special verdict, and if in any aspect the defendant can recover, he is entitled to a judgment for the amount agreed upon.

I have just seen the concurring opinion and have had no sufficient opportunity to collect and cite the authorities for the purpose of showing the fallacy upon which I think it rests. I can only say briefly that the principle stated therein and the authorities cited to sustain it, apply strictly to officers appointed by law to collect taxes and who act solely in their official capacity. They are within the rule laid down in *Mial v. Ellington*, 134 N. C., 131. Judge Bryan acted not in an official capacity, but under a contract which I think has been shown to be governed by a very different principle, in reference to the right to recover either on the special or on the implied contract. It is perfectly clear that the mere fact that he was employed to collect taxes gave the city no right to violate its contract with impunity or without any liability for its breach.

CONNOR, J., concurs in the dissenting opinion.