PENCE v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY

1. **Railroads:** COLLISION AT HIGHWAY CROSSING: NEGLIGENCE: EVIDENCE. Plaintiff, riding in a wagon, was about to cross defendant's two lines of railroad which were only eighty feet apart. He testified that before reaching the first crossing he stopped and looked and listened for trains, but saw and heard none; that just as he cleared that crossing a train rushed by on that track, and that another, which was rapidly approaching on the second track, collided with his team and wagon and severely injured him. The evidence is reviewed (see opinion) and *held* to be conflicting as to obstructions which might have prevented plaintiff from seeing the approaching trains; also, as to the speed of the trains, and as to whether proper signals were given by them as they approached the crossings; wherefore it was properly submitted to the jury, whose verdict thereon cannot be disturbed in this court.

2. ———: ———: TWO TRACKS AND TRAINS. In such case it was proper to consider together the matters involved in the operation of the two trains.

Pence v. The Chicago, R. I. & P. Ry. Co.

3. ———: ———: SPEED OF TRAINS: EVIDENCE. In such case, a witness who resided in the locality of the accident, and was familiar with the running of trains, and saw the trains in question pass, was competent to testify to their speed.

4. ———: ———: NEGLIGENCE: INSTRUCTIONS AS TO SEPARATE ALLEGATIONS. In such case it was not the duty of the court to point out each matter alleged as negligence, and to designate all the evidence which could properly be considered in connection with it, for such course would have made the charge so intricate and lengthy that it would have been as likely to confuse as to instruct the jury.

5. ———: ———: INSTRUCTIONS AS TO OBJECTS OBSTRUCTING VIEW: ASSUMPTION OF FACTS. In such case the court instructed as follows: "Evidence has been introduced as to the existence of trees, fences and other objects upon the right of way of defendant; also, of the condition of the highway at different points near and over said crossing. You are instructed that said condition of the highway, and the existence of such objects in the right of way, if you find said objects did exist, and that the condition of said highway has been shown, did not constitute negligence on the part of the defendant, but are competent as proving the degree of care which should be exercised by the defendant, and also by the plaintiff, in approaching said crossing." *Held* not erroneous, though the evidence did not show any obstruction on the right of way;—the vital matter being, not whether they stood on the right of way, but how far they obstructed the view.

6. ———: ———: EVIDENCE, AFFIRMATIVE AND NEGATIVE: WEIGHT. In such case an instruction was properly refused which charged that "affirmative testimony, as that a bell was rung or a whistle sounded, is entitled to more weight than negative testimony, as that a bell or whistle was not heard," because it ignored the comparative credibility and means of knowledge of the witnesses.

7. Practice: ARGUMENT TO JURY: REFERRING TO MATTERS NOT OF RECORD: OBJECTION TOO LATE. In this case there were many witnesses, and some of them were not present, and the transcript of their testimony at a former trial was introduced. Plaintiff's counsel, in addressing the jury, commented upon the testimony of two witnesses at the former trial, which was not introduced on this trial; but this he did by mistake as to the fact, and defendant's counsel, though present and knowing what was being done, made no objection. *Held* that the error could not, on appeal, be urged as a ground for reversal.

8. Verdict: SPECIAL INTERROGATORIES: INDEFINITE ANSWERS. Where the general verdict could not have been controlled by any answers that might have been made truthfully to special interrogatories, the fact that some of them were not answered accurately, and others not answered at all, is no ground for reversal.

9. ———: PERSONAL INJURY: AMOUNT. Where a physician with a life expectancy of twenty-three years, and with a practice worth from twelve hundred to fifteen hundred dollars per year, was almost totally disabled by defendant's negligence, and incurred great suffering and expense on account thereof, a verdict for twenty-four thousand dollars' damages, nine thousand dollars of which was remitted to avoid a new trial, was not so large as to evince passion or prejudice on the part of the jury,—no improper motives being apparent.

*Appeal from Polk District Conrt.*—HON. MARCUS KAVANAGH, JR., Judge.

FILED, FEBRUARY 6, 1890.

ACTION to recover damages resulting from personal injuries for which defendant is alleged to be responsible. There was a trial by jury, and a verdict for plaintiff for the sum of twenty-four thousand dollars. Defendant filed a motion for a new trial, and the district court ordered that unless plaintiff remitted of the verdict the sum of nine thousand dollars, and accepted a judgment for fifteen thousand dollars, the motion for a new trial should be sustained. The plaintiff thereupon elected to remit nine thousand dollars, the motion was overruled, and a judgment was rendered in favor of plaintiff for fifteen thousand dollars and costs. The defendant appeals.

*T. S. Wright* and *Cummins & Wright*, for appellant.

*Parsons & Perry*, for appellee.

ROBINSON, J.—The injuries in question were received on the thirtieth day of October, 1878. At that time, defendant was engaged in operating two lines of railway, which extended eastward for some distance from Des Moines. One of them was known as the Chicago, Rock Island and Pacific railway, and the other as the Keokuk and Des Moines railroad. The first was commonly designated as the "Rock Island," and the other as the "Keokuk" road. The latter was south

of and, for several miles eastward of Des Moines, substantially parallel to the former. A highway known as the "Rising Sun Road" also led eastward from Des Moines, near the tracks of said railway, until it crossed them, at an acute angle, a short distance east of a building known as the "Greever House." That house stood between the Keokuk track and the highway south of it, about four hundred and eighty feet west of the point where the latter crossed the former. It was about twenty by thirty feet in size, and stood fifty-four feet north of the highway, and its northeast corner was thirty-nine feet from the south rail of the Keokuk track, at its nearest point. At the time in question, there were numerous trees, some out-buildings, a fence and hedge between the north line of the house produced eastward and the Keokuk track, in the vicinity of the house. A short distance west of the Greever house the two railway tracks curved slightly, and, before reaching the line of that house, began to trend southward, and continued in that direction until after the line of the highway was crossed. For more than a quarter of a mile west of the crossings, the railway tracks are but eighty feet apart, west of the Greever house; and between the Keokuk track and the highway there were buildings and other objects, which, in places, obstructed a view of the railway tracks from the south.

Late in the afternoon of the day named, plaintiff and one Crews left Des Moines in a common farm-wagon, drawn by a mule team, which was driven by Crews. It was nearly or quite dark when they approached the Greever crossing by the Rising Sun road. They stopped before reaching the first track and listened and looked for trains, then drove over the Keokuk track. Just after they crossed, a train passed over it from Des Moines, and another was seen approaching from the same direction on the Rock Island track. It is claimed that their team then became frightened, and could not be controlled; that it ran eastward along the highway, and when near the east crossing was

struck by the Rock Island train, and that the injuries of which plaintiff complains were the result of the collision.

Plaintiff claims that the defendant's roads were negligently located and constructed west of the Greever crossings, and that they were hidden from view in places by obstructions of various kinds; that ordinary prudence required them to have a flagman at the crossings, but that it negligently failed to do so; that the crossings were improperly located and constructed; that they were not of sufficient width; that ditches were dug at the sides of the Rock Island crossing, leaving a strip less than twelve feet in width for the crossing. Negligence in locating and constructing cattle-guards and fences, and in permitting obstructions to exist on its right of way, and near to the tracks, which prevented the seeing of its trains from a point near the crossings, and in failing to repair the crossings, is also charged. It is further claimed that the trains in question were run at a high and improper rate of speed; that proper signals were not given; that a whistle was blown at an improper time, which frightened the team Crews was driving; that the employes of defendant on the Rock Island train saw and knew the danger to which plaintiff was exposed, but made no effort to avoid the collision; that, on the contrary, the engineer of that train wrongfully increased the speed of the train, and sounded the whistle; and that the injuries of plaintiff were the consequences of the alleged negligent and wrongful acts on the part of defendant. The answer admits that defendant operated the two roads at the time charged, and denies all grounds of liability alleged.

This case has been in this court before. For the opinion in the former appeal, see 63 Iowa, 747. We have deemed it important to set out the facts involved in this appeal quite fully, for the reason that the case, as now presented to us, is in several particulars materially different from that formerly considered.

I. Counsel for appellant discuss at length the evidence, and insist that it shows that plaintiff was

**1. RAILROADS: collision at highway crossing : negligence : evidence.** guilty of contributory negligence, which resulted in the injuries complained of, and that defendant was free from all negligence. The plaintiff claims, and there is evidence which tends to show, the following facts: Plaintiff and Crews approached the Greever crossing on the Rising Sun road, going east, at about dark of the day named. Before reaching the first crossing, they stopped at least twice to look and listen for approaching trains. The last time they so stopped, they were within from fifty to sixty feet of the west crossing. They looked along the tracks towards Greever's house, but neither saw nor heard anything of approaching trains. The team was then started at a slow trot across the track. When it had about reached it, plaintiff saw a flash from the headlight of an approaching locomotive, and, before the wagon had cleared the track more than a few feet, a passenger train went by at a high rate of speed. When the locomotive was about at the crossing, it whistled, thereby frightening the mules Crews was driving, and they commenced to run towards the east crossing. The distance between the two crossings was two hundred and sixteen feet. When the mules commenced to run, a train was approaching the east crossing, on the north track, from the west. The engineer in charge of the engine of that train saw the team, and thought it was trying to cross the track ahead of the train. He saw that the team was scared and unmanageable. When he saw them he was about three hundred feet from the crossing, and the team was about midway between the crossings, or about one hundred and ten feet from the east crossing, towards which it was going at a rapid pace. He says: "I saw this; and that if I undertook to stop my train there was no possibility, in any way, of saving the lives of the men, whoever they were, on that wagon, and consequently dropped my engine right down, and gave her all the steam I could, so as to clear that crossing before they could get there. or head them off; but they got down to the open place next to

the cattle-guard, and the mule on the near side got there just in time to strike the bumper of my engine. * * * The bumper * * * is the timber that runs out on the cow-catcher." One mule was killed, the wagon was overturned, and plaintiff was thrown out, and severely injured. Before the east crossing was reached, plaintiff had attempted to aid Crews in controlling the team, but without avail. No whistle was blown, nor bell rung, until after the first track had been crossed.

Appellant insists that the preponderance of the evidence is with it on most of the material issues; that it is shown by mathematical demonstrations that an engine on the Keokuk track could have been seen from the highway, at the point where plaintiff claims to have stopped last before making the first crossing, for a distance of at least thirteen hundred feet westward, and that it was not possible for the train, even if it was running at the speed claimed by appellee, to have reached the crossing as soon as he claims that it did after the team started to cross. It must be admitted that there is much to support this claim of appellant. But several witnesses testified that the Keokuk train was running at least thirty-five miles an hour, and that no signals were given, or at least heard by those who were near enough to hear, until after the crossing on the Keokuk road was reached. The evidence as to the obstructions which tended to hide the track from plaintiff's last stopping-place was conflicting. Witnesses do not agree as to the location of the fences, the number and sizes of the out-buildings, the number and sizes of the trees, and the hedge, at Greever's place. Even if it be conceded that the stumps of the trees—which have been cut down since the accident happened—are accurately located, the height to which the trees were trimmed, and at which the spread of the branches begins, is not definitely shown. Therefore, we cannot say that the jury should have considered the positive testimony of the plaintiff and Crews, that they stopped and listened within the distance claimed, of the crossing, and that

they could not see anything on the tracks, overcome by
the testimony which shows that a few years after the
accident, and after trees had been cut down, and build-
ings and fences had been removed, an engine on the
tracks could have been seen thirteen hundred feet west-
ward from the plaintiff's last point of sight; the line of
sight being north of the supposed site of the trees.

There are other points of conflict: The plaintiff,
and at least two disinterested witnesses, testify that the
Keokuk train was a passenger train, although one says
it contained some freight cars. The men who claim to
have been on the train, the men who were on the other
train, and Crews testify that it was a freight train.
The men also testify that the proper crossing signals
were given, and thus contradict the witnesses for plain-
tiff. If the case were triable here *de novo*, we should
not reach the conclusion the jury did in regard to several
material issues. Some of those conclusions seem to us
to be contrary to the weight of the evidence, as it
appears in the record. But we cannot set aside the ver-
dict on that ground without usurping the functions of
the jury. The weight of the evidence is not so clearly
against the findings of the jury as to authorize us to set
aside the verdict, and overrule the court below in refus-
ing a new trial on that ground. If defendant's train
approached the Greever crossings at a high rate of speed,
without the proper signals, defendant was liable for
negligence, if damage resulted. If the engineer of the
Rock Island train, when he saw the team between the
tracks, should, in the exercise of reasonable care and
diligence, have reversed his engine, and whistled for
brakes, the defendant was liable for the damages which
resulted from his failure to do so. It may be that he
resorted to the means which seemed to him best to avoid
an accident, but there is ground in the evidence for
believing that, if, when he first saw that the team was
trying to make the crossing ahead of his engine, he had
used all the appliances available for checking the speed
of the train, the accident would have been avoided.

II. It is insisted that the matters involved in operating the train on the north track should have been considered separately from those connected with operating the train on the other, but we do not think that should have been done. If plaintiff's claim be well founded, he would not have crossed the first track before the train, and thus would have escaped injury, or, having crossed it, the team would not have become frightened and unmanageable, if the Keokuk engine had not negligently whistled when it was on the crossing and close to it. It is unnecessary to consider other conclusions which the jury might have reached from the evidence.

2. ——: ——: two tracks and trains.

III. Questions are raised as to the rulings of the court on the admission of evidence. We have examined them, and think the rulings were correct, or that they related to matters of such trifling importance that no prejudice could have resulted. The most important question thus raised refers to the competency of a witness to testify to the speed at which the trains in question were running. The witness was a resident of the locality, was familiar with the running of trains, and had an opinion as to the speed of those in controversy. We think his evidence was competent.

3. ——: ——: speed of trains : evidence.

IV. Appellant contends that a grave error of the court was its failure "to analyze the allegations with respect to negligence, and direct the attention of the jury to the evidence which should be considered in support of the several averments." It is said that some of the matters alleged to constitute negligence were remote, and the jury should have been so instructed; that the court erred in grouping together in its charge substantially all the allegations of the petition in regard to negligence; that it should have omitted the immaterial and unsupported charges; and that the charge was inaccurate as to some of its attempted statements of fact. We think it was proper for the charge to state

4. ——: ——: negligence: instructions as to separate allegations.

the claims of the plaintiff fully. The claims made by him necessarily required a lengthy statement of facts. We do not think it was either practicable or desirable for the court to point out to the jury each separate claim, and the evidence which might properly be considered in connection with it. Some of the alleged negligence related to the south track, some to the north, and some to both. Many of the circumstances which were relied upon to show negligence were so related that it would have been erroneous to treat them as separate and distinct from each other. The jury were instructed, in regard to some of the matters alleged as negligence, that they could not be considered, excepting to show the degree of care which plaintiff should have exercised in approaching the crossings, and which defendant should have used in operating its trains. If the charge had pointed out each matter alleged as negligence, and had designated all the evidence which could be properly considered in connection with it, it would have been necessarily so intricate and lengthy that it would have been as likely to confuse as to instruct the jury. The issues seem to have been fairly submitted to the jury. There were some statements in the charge which were not entirely accurate, but they were largely in the nature of mere clerical mistakes, easily understood, and not of a nature to mislead, or cause prejudice.

V. The court charged the jury as follows: "Evidence has been introduced as to the existence of trees, fences and other objects upon the right of way of defendant; also, of the condition of the highway at different points near and over said crossing. You are instructed that said condition of the highway, and the existence of such objects in the right of way, if you find said objects did exist, and that the condition of said highway has been shown, did not constitute negligence on the part of the defendant, but are competent as showing the degree of care which should be exercised by the defendant, and also by the plaintiff, in approaching said

*5. instructions as to objects obstructing view: assumption of facts.*

crossing." Appellant complains of this instruction on the ground that the evidence did not show that any of the obstructions named were within the right of way; that, although it was shown that the right of way was one hundred feet wide, and that the obstructions were within fifty feet of the center of the track, yet there is no presumption that the track was located in the center of the right of way. The jury were told, however, that if there were such obstructions on the right of way, that fact would not constitute negligence on the part of defendant. Therefore no prejudice could have resulted. The real question was whether, in view of their proximity to the track, the plaintiff and defendant exercised due caution in approaching the crossing. The vital matter was not whether they stood on defendant's right of way, but how far these obstructed the view.

VI. Appellant complains of the refusal of the court to give an instruction asked in language as follows:

6. ——:——: "In the consideration of the evidence, evidence, affirmative testimony, as that a bell was affirmative and negative: rung or a whistle was sounded, is entitled to weight. more weight than negative testimony, as that a bell or whistle was not heard." The instruction ignores the fact that, in weighing such testimony, the comparative credibility and means of knowledge of the witnesses should be considered. If the witness who gave the negative testimony was where he would have heard the bell, had it been rung, or the whistle, had it been blown, his evidence would have been entitled to as much weight as that of a no more credible witness who, by reason of distance, location on the moving train, or other cause, would be less likely to hear or notice the sounds in question.

VII. Appellant asked that forty-four instructions be given the jury, and now insists that the court erred in refusing to give nearly all of them. We find it unnecessary to review each instruction separately. So far as they were correct and important, they were substantially included in the charge given.

VIII. In making the closing argument to the jury, one of the attorneys for plaintiff referred to, and commented at some length upon, the testimony of two witnesses as shown by a transcript of their testimony given on the former trial. This testimony was not offered on the last trial; and appellant complains of the course pursued by the attorney, and insists that it was prejudicial misconduct. It appears that a large number of witnesses, who testified on the first trial, did not appear personally at the second, but that a copy of their testimony, as disclosed by the record, was read to the jury. It appears that the testimony of the two witnesses in question was not formally offered on the second trial, but that the attorney for plaintiff supposed that it had been, and so treated it. It also appears that the attorney for defendant knew that he was so treating it, but made no objection. We think, in view of these facts, the attorney for plaintiff was not guilty of such misconduct as to require a reversal of the judgment. It is true, he should have known what evidence was offered; but many witnesses were examined orally, and the depositions or transcripts of the testimony of many others read. It was not an unnatural mistake for him to make; and we think, under these circumstances, it was incumbent upon defendant to call the attention of the attorney to the mistake, by an objection or otherwise, before it could be heard to complain.

*7. PRACTICE: argument to jury: referring to matters not of record: objection too late.*

IX. The jury returned a number of special findings, some of which are criticised by appellant. The first is as follows: "How far westerly from the crossing of the Keokuk & Des Moines track would an engine, or its headlight, be visible to a person in a wagon fifty feet from said crossing, westerly on the highway, upon the night in question? *Answer.* A little east of Greever's house." To interrogatories as to the rate of speed at which the trains were running at the time of the accident, the jury answered: "Fast." To two other interrogatories the

*8. VERDICT: special interrogatories: indefinite answers.*

jury answered, in substance, that they "didn't know." Some of the interrogatories to which these answers were returned related to matters which were immaterial, and the general verdict could not have been controlled by any answers which could have been truthfully made to any of them. It was not necessary for the jury to find facts which would have enabled them to answer the interrogatories which they did not attempt to answer in order to arrive at a correct general verdict. Therefore, we will not disturb the judgment because the special findings were not so full nor so accurate as they might have been.

X. We have examined all the questions discussed by counsel, and have referred to all which seemed to require special mention. Appellant has placed most stress upon the claim that the verdict and special findings were not supported by the evidence, and that the jury were influenced by passion or prejudice in its deliberations and conclusions. As already stated, we do not think the verdict was unsupported by the evidence. Although the amount of the verdict was large, it does not appear that it was the result of passion or prejudice. At the time of receiving the injuries complained of, the plaintiff was a practicing physician and surgeon, whose income from his profession was from twelve to fifteen hundred dollars per year. He was almost totally disabled by his injuries, and can earn now but two or three hundred dollars per year. His expectation of life when the injuries were received was twenty-three years. He incurred much expense, and suffered great pain, in consequence of his injuries. In fixing the amount of their verdict the jury were no doubt influenced by the facts we have recited. Hence improper motives are not apparent. Our conclusion is that the judgment of the district court should be     AFFIRMED.

9. VERDICT: personal injury: amount.