Fort Wayne, etc., Traction Co. *v.* Miller—48 Ind. App. 633.

resulted from ptomaine poisoning referred to in the instructions.

These instructions were applicable to a material issue in the case, and were of such a character that they naturally would and most probably did influence the jury prejudicially to appellant. The record therefore discloses harmful error for which the judgment must be reversed.

Judgment reversed, with instructions to grant a new trial.

---

## Fort Wayne and Wabash Valley Traction Company *v.* Miller.

[No. 7,333.   Filed November 17, 1911.]

1. RAILROADS.—*Use of Streets.—Frightening Horses.—Last Clear Chance.—Complaint.*—A complaint alleging that the plaintiff was driving his horse along a street, that the defendant's interurban car approached from the rear at an excessive speed, making unusual and unnecessary noises, frightening plaintiff's horse, which was gentle and safe and which was driven in a careful manner, that defendant's servants could have seen that plaintiff's position was perilous, and that he could not escape, that defendant negligently continued its reckless speed, and blowing its whistle, in an endeavor to pass him, knowing that the horse was running away, to plaintiff's damage, is sufficient. p. 635.

2. NEGLIGENCE. — *Contributory.* — *Negativing.* — *Complaint.* — Since 1899 (Acts 1899 p. 58, §362 Burns 1908) it is not necessary, in a complaint for personal injuries, to negative contributory negligence, a complaint, otherwise good, being sufficient where it does not affirmatively show such negligence. p. 638.

3. RAILROADS.—*Running down Travelers.—Wilful Injuries.—Complaint.*—A complaint alleging that the plaintiff was driving along a street, that the defendant's car approached from the rear at an excessive speed, causing unusual noises and frightening plaintiff's horse, that defendant's servants saw plaintiff's plight and wilfully and maliciously sounded the whistle, causing such horse to run away, that they then purposely and maliciously pursued said horse in order to frighten it still more, that they knew the plaintiff could not stop the horse nor extricate himself from the danger, that, seeing the horse plunge and rear, they continued maliciously to sound the whistle intending to cause the horse to continue to run away, to plaintiff's damage, shows a wilful injury. p. 638.

634    APPELLATE COURT OF INDIANA,

Fort Wayne, etc., Traction Co. *v.* Miller—48 Ind. App. 633.

4. APPEAL.—*Briefs.*—*Waiver.*—Points not discussed are waived. p. 640.

5. RAILROADS.— *Running down Travelers.*— *Noises.*— *Frightening Horses.*—*Evidence.*—In an action by a traveler for injuries sustained because of the approach of defendant's car and of unusual and unnecessary noises made, thereby frightening plaintiff's horse and causing it to run away, it is not necessary for the plaintiff to show that such operation or noises were not necessary nor usual at other times, or under other circumstances. p. 641.

6. RAILROADS.— *Speed.*— *Nonexperts.*— *Evidence.*— Nonexperts are competent to testify as to the speed of a train. p. 641.

From Allen Circuit Court; *E. O'Rourke,* Judge.

Action by Sebastian Miller against the Fort Wayne and Wabash Valley Traction Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Barrett & Morris,* for appellant.

*Harper & Eggeman* and *Leonard & Townsend,* for appellee.

HOTTEL, J.—This was an action for damages on account of personal injuries received by appellee in a runaway, alleged to have been caused by the negligent operation of one of appellant's interurban cars.

Appellee filed three paragraphs of complaint, but dismissed the first of these, and proceeded upon the other two, to each of which a demurrer was overruled and exception given to appellant. The case was put at issue by an answer in general denial, and upon a trial the jury returned a general verdict for plaintiff for $5,000, with its answers to interrogatories. Appellee remitted $1,000 from this verdict, and the court rendered judgment in his favor for $4,000. A motion for a new trial was overruled.

The errors assigned and relied on are the rulings of the court on the demurrers to the second and third paragraphs of complaint, and on the motion for new trial.

Appellant urges that the second paragraph of the complaint is insufficient for the following reasons: It fails to

aver (1) "either specifically or in equivalent terms
1. that the objects or acts done by appellant had a tendency to or were likely to frighten a horse of ordinary gentleness; (2) "that appellee's horse was a horse of ordinary gentleness;" (3) that the noises were not "incidental to the use of appellant's interurban cars on the highway described in the complaint," and "were not necessary to the proper and safe operation of said car, or related to the traveling public, or to persons driving horses * * * of ordinary gentleness."

In answer to the first objection it is sufficient to say that the allegations of the complaint show that the operation of appellant's car did in fact cause appellee's horse to become frightened; that said horse, when it became so frightened, was being driven, hitched to a covered buggy with the top up, in which appellee and his daughter were being conveyed along one of the much-used public streets in the city of Fort Wayne, running north and south through a populous part of said city; that appellant's interurban tracks, which were double. occupied the center of said street, leaving a very narrow space on each side thereof, between the outer rails and the sidewalk, "affording barely sufficient room for an interurban car to pass a buggy;" that appellee's horse, when it became frightened, was being driven in said narrow space on the west side of said street, in a southerly direction; that for a quarter of a mile or more said horse was in view of the operators of appellant's said car, which was approaching from the rear at "the excessive rate of speed of about thirty miles an hour," which excessive speed created unusual and unnecessary noises, causing said horse, which was "city broke and gentle, and had been driven around street-cars, interurban cars and railroad trains with perfect safety," and was then being driven by appellee "in a prudent and careful manner," and was "under complete control," to become frightened; that appellant's servants operating said car were so situated that they could and should have seen that said

horse was so frightened, and that appellee's situation was a dangerous and perilous one, and that his situation was such that he could not escape from appellant's car; that under such circumstances appellant's servants gave no heed to appellee's perilous position, but carelessly and negligently continued the reckless speed of said car, and carelessly, unnecessarily and negligently, and without any regard whatever to the safety of said appellee and his daughter, blew the whistle, which gave forth such a very loud and piercing noise that appellee's horse became so frightened that he lost control of it; that the operator of said car, although he knew, or could have known, that said appellee was losing control of said horse, and that said horse was running away, unnecessarily, carelessly and negligently continued to blow the whistle and increase the speed of said car in his endeavor to pass appellee, and pursued him 400 feet, and finally passed said horse at a time when it was running away and appellee had lost control over it; that said operator, by the exercise of ordinary care, could have known that said horse was running away, and that if he continued to blow the whistle and pursue said horse down the street serious injury would result to appellee.

We have indicated enough of the substance of this paragraph of the complaint to show that it is entirely sufficient under a very recent holding of the Supreme Court.

Appellant's objections to this paragraph of complaint would indicate that it mistakes the theory upon which such paragraph proceeds. While this paragraph alleges that appellant, by the operation of its car in the manner charged, caused appellee's horse to take fright, its theory is that appellant caused the horse to take fright at a time and place, and under such circumstances, as to put appellee in imminent peril from which he could not extricate himself, and that, seeing and knowing appellee's perilous situation, appellant carelessly, negligently and unnecessarily so operated its

car as to increase such peril, and thereby caused the horse to run away, with the resulting injuries to appellee. This is actionable negligence. *Effinger* v. *Fort Wayne, etc., Traction Co.* (1911), 175 Ind. 175; *Indianapolis Union R. Co.* v. *Boettcher* (1892), 131 Ind. 82; *Louisville, etc., R. Co.* v. *Stanger* (1893), 7 Ind. App. 179, 195; *Lake Erie, etc., R. Co.* v. *Juday* (1898), 19 Ind. App. 436; *Kentucky, etc., Bridge Co.* v. *Montgomery* (1902), 139 Ky. 574, 67 S. W. 1008, 51 L. R. A. 781.

The case of *Effinger* v. *Fort Wayne, etc., Traction Co., supra,* is especially applicable to this case, and is decisive of the question of the sufficiency of the paragraph in question as against all the objections urged against it.

Appellee does not question appellant's right to run its cars over the highway, or to make such noises as are necessary, usual and incidental thereto, but bases his complaint upon a negligent and wilful misuse of those rights at a time when appellee's perilous situation must have been evident to the operator of the car, and when such misuse might reasonably be expected to increase appellee's danger.

In the case of *Effinger* v. *Fort Wayne, etc., Traction Co., supra,* the Supreme Court said: "It is not sought in this complaint to charge defendant with negligence in the first instance, by reason of either the speed of the car or its appearance, but the theory of the pleading is that plaintiff was in a situation of imminent peril, and defendant, with full knowledge of the situation, increased that peril, and thereby caused the injury. It may be stated as a general rule, that when one sees another in imminent peril from which he cannot extricate himself, it is the duty of the former so to act as not to increase the peril, and if he does act in a manner to increase the danger after knowledge thereof, he is guilty of negligence."

In the same case the following is quoted with approval from *Culp* v. *Atchison, etc., R. Co.* (1887), 17 Kan. 475:

"That a party has a right to do a given act at certain times and under certain circumstances, does not prove that the same act is right under all circumstances, and at all times."

In support of its contention that the complaint is defective in failing to aver that appellee's horse was a horse of ordinary gentleness, appellant cites *Shrum* v. *Board, etc.*

2.  (1895), 13 Ind. App. 588, 592. The complaint in the case at bar is sufficient, even under that authority, on the subject of appellee's contributory negligence, in that it negatives the existence of such negligence; but since the act of 1899 (Acts 1899 p. 58, §362 Burns 1908) it is only necessary that a complaint for personal injury shall not affirmatively show contributory negligence. *Southern R. Co.* v. *Davis* (1905), 34 Ind. App. 377; *Greenawaldt* v. *Lake Shore, etc., R. Co.* (1905), 165 Ind. 219; *Van Winkle* v. *New York, etc., R. Co.* (1905), 34 Ind. App. 476.

Appellant insists that the third paragraph of complaint is insufficient because the averment as to wilfulness is too narrow; that to make the complaint good it was necessary for appellee "to aver that the injurious acts alleged in the complaint were purposely or intentionally committed, with the intent wilfully and purposely to inflict the injuries of which appellee complained.

The third paragraph sets out the same facts alleged in the second, but proceeds upon the theory that the agents of appellant purposely, maliciously and wilfully operated

3.  the car in the manner set out, and alleges that "although the servants of said defendant knew that the horse was frightened by reason of the approach of said car, said car did not slacken its speed, but continued to approach said plaintiff in the same rapid manner, * * * and when said car had almost overtaken said plaintiff, going at the rate aforesaid, and although his said horse was so frightened, and while plaintiff was attempting to control, manage and direct said horse, said agents and servants of said defendant, acting in the line of their duty, * * * pur-

posely, wilfully and maliciously, and for the purpose of frightening plaintiff's horse, caused the whistle upon said car to blow suddenly, and in a loud, unusual and shrill tone, which caused plaintiff's horse to become much more frightened, and said horse plunged and started to run away, and the operator of said car then purposely, maliciously and wilfully, and for the purpose and with the intent of still more frightening plaintiff's horse, which was then running away, pursued said horse  *  *  *  down the street  *  *  * for a distance of 400 feet, at which time the operator of said car had so unnecessarily, purposely and wilfully increased the speed thereof that he passed said plaintiff's horse, although said horse was  *  *  *  running away, and said plaintiff had lost complete control of him, all of which the servants of said defendant well knew, and knew also that plaintiff could not escape or avoid the injury or danger threatened; that defendant's said servants did thereby purposely, wilfully and maliciously cause plaintiff's horse to become greatly frightened, and caused him to rear and plunge and run away with plaintiff, and to become unmanageable and uncontrollable; that all of said time plaintiff and his said horse were near said interurban car, and in plain view of defendant's said agents and servants, and that while plaintiff's said horse was  *  *  *  rearing, plunging and running away, which said agents and servants of defendants plainly saw and well knew, they  *  *  *  purposely, wilfully and maliciously continued to blow the whistle on said car, and purposely, maliciously and wilfully continued to make said whistle on said car  *  *  *  sound in an unusual, loud, unnecessary and piercing manner,  *  *  *  and purposely, maliciously and wilfully continued to pursue and chase plaintiff's horse while it was so running away, thereby wilfully intending to frighten plaintiff's said horse, and wilfully intending to cause plaintiff's said horse to run away, well knowing that plaintiff was unable to control or manage said horse, and avoid the injuries hereinafter alleged;  *  *  *  that

all of said injuries were due wholly and solely to the wilful and malicious acts of the agents of said defendants as aforesaid, they at said time well knowing that their said acts aforesaid would frighten said plaintiff's horse and cause it to run away, and at said time well knew that plaintiff would lose and had lost control of his said horse, and would be and was unable to avoid the threatened danger and injuries aforesaid.''

The cases of *Gregory* v. *Cleveland, etc., R. Co.* (1887), 112 Ind. 385, and *Union Traction Co.* v. *Lowe* (1903), 31 Ind. App. 336, are cited by appellant in support of its contention as to the insufficiency of this paragraph, but the requirements of said cases seem to be met by appellee's allegation that appellant's servants ''maliciously and wilfully continued to pursue and chase plaintiff's horse while it was so running away, thereby wilfully intending to frighten plaintiff's said horse, and wilfully intending to cause plaintiff's said horse to run away, well knowing that plaintiff was unable to control or manage said horse and avoid the injuries hereinafter alleged.''

The motion for a new trial contains twenty grounds therefor, but all of these except the first, second, third, fourteenth, fifteenth and seventeenth have been specifically waived by appellant, and of these the first has been waived by failure to present it in appellant's brief. The second is not a proper ground for a new trial, but is properly presented by the third, and grounds fourteen, fifteen and seventeen involve the same question, so that but two reasons need be considered, viz., (3) the verdict is not sustained by sufficient evidence, and (17) error of law occurring on said trial in this: that the court erred in permitting plaintiff's counsel to ask and plaintiff's witness, on examination-in-chief, to answer the following question: ''Mr. Greer, in your judgment, how fast was that car going at the time it passed your house? A. In my opinion the car was running from fifteen to twenty miles an hour.''

Appellant contends that the evidence is insufficient to sustain the verdict, for the following reasons: (1) There was no proof that the noises and speed, described in the complaint, were not necessary to the operation of appellant's car. (2) There was no proof that the noises complained of and alleged to have been made by appellant's employes in the operation of its car, were not necessary and usual to the operation of such car.

There was proof tending to show that the manner of operating appellant's car, and the noises made, were not necessary or usual at the particular time and under the circumstances.

Under the theory of appellee's complaint, proof that such operation or noises were not necessary nor usual at other times and under other circumstances was not required.

5. What we have said in the discussion of the sufficiency of the complaint applies with equal force to this objection to the sufficiency of the evidence.

The only case cited by appellant in support of its contention that the court erred in admitting the evidence of witnesses Felts and Greer, is that of *Wright* v. *Crane*

6. (1905), 142 Mich. 508, 106 N. W. 71, in which it was held that "an estimate of speed should have as a basis at least a reasonable opportunity to judge." The court also said in the same case: "It is so obvious that this witness was not in a position to estimate the speed of this vehicle that we feel constrained to hold that it was error to admit this testimony. Nor are we able to say that it was error without prejudice. There was a sharp dispute on the facts, and any testimony showing a reckless rate of speed was well calculated to turn the scale in favor of the plaintiff."

Each witness testified that he saw the car—Felts, as it passed him, and Greer, from a window in his residence.

"A nonexpert witness may give an opinion as to the speed at which the train was moving. Possibly the testimony of a

nonexpert may be of less value than that of an expert, but that proves nothing to the purpose, for here the question is whether the evidence should be heard, not what weight should be assigned to it." *Louisville, etc., R. Co.* v. *Hendricks* (1891), 128 Ind. 462, 463. To the same effect are the following cases: *Evansville, etc., R. Co.* v. *Crist* (1889), 116 Ind. 446, 457, 2 L. R. A. 450, 9 Am. St. 865; *Louisville, etc., R. Co.* v. *Jones* (1886), 108 Ind. 551, 566; *Guggenheim* v. *Lake Shore, etc., R. Co.* (1887), 66 Mich. 150, 155, 33 N. W. 161; *Detroit, etc., R. Co.* v. *Van Steinburg* (1868), 17 Mich. 99, 101; *Pence* v. *Chicago, etc., R. Co.* (1890), 79 Iowa 389, 397, 44 N. W. 686.

We have considered all the errors assigned and presented by appellant, and are of the opinion that each of the rulings called in question was correct, and that the judgment of the court below should be affirmed.

Judgment affirmed.