BARNEY ET AL. *v.* THE YAZOO DELTA LAND
COMPANY.

[No. 21,825.    Filed March 11, 1913.]

1. TRIAL.—*Conclusions of Law.—Exceptions.*—Exceptions to conclusions of law based on a special finding of facts admit, for the purpose of the exception, that the facts were correctly found. p. 342.

2. APPEAL.—*Review.—Findings.—Conclusiveness.*—A special finding of facts supported by some evidence is conclusive on appeal. p. 343.

3. BROKERS.—*Contract of Employment.—Performance.—Sale of Real Estate.*—The right to a brokerage commission for the sale of real estate is dependent upon success in procuring a purchaser, and the broker is not entitled to a commission, regardless of the time and services devoted to procuring a customer, unless he finds one who is ready and willing to complete the purchase on the terms agreed upon.    p. 343.

4. BROKERS.—*Contract of Employment.—Sale of Real Estate.—Termination of Authority.—Rights of Parties.*—Where plaintiffs, who had an option to sell defendant's land, wrote defendant that they knew of no one whom they could interest in the purchase of the land and advised defendant not to hesitate in negotiating with any prospective purchaser whom defendant might have, defendant thereafter, acting in good faith, had a right to grant a new option to another broker, and, even though a sale was thereby consummated with a customer with whom the plaintiffs had been negotiating, no liability in favor of plaintiffs was thereby incurred.    pp. 344, 346.

VOL. 179—22

5. BROKERS.— Contract of Employment.— Performance.— Time.— Where a broker is employed to find a purchaser at a stated price and upon given terms, and has expended his time and performed labor in getting the parties interested, he will be allowed a reasonable length of time in which to complete his labors, unless a definite time has been agreed on within which he is to produce a purchaser, in which event the time stipulated is of the essence of the contract and the broker must perform before the expiration of the time in order to entitle him to the commission.   p. 345.

6. VENDOR AND PURCHASER.—Options.—Expiration.—An option to buy or sell real estate on or before a certain date will expire at the time mentioned without notice or declaration of forfeiture. p. 345.

7. BROKERS.—Options.—Authority to Sell.—Revocation.—Sale by Owner.—Where a broker is granted an option or authority to sell land for his principal within a given time, and he fails to make a sale within the period or a reasonable extension thereof, the principal, acting in good faith, may revoke the agency and sell to others, or even to the same person or corporation with whom the broker had been negotiating, without liability to the broker for commissions.   p. 348.

8. BROKERS.—Action for Commission.—Performance of Contract.— Evidence.—It was not erroneous, in an action for a broker's commission, to refuse to permit a witness to testify as to the reason why a sale was not consummated by the broker within the prescribed time, since plaintiff, in accepting the option to sell, assumed the uncontrolled risk that might arise to prevent a sale, and the witness was not the purchaser and had no authority to bind it.   p. 349.

9. APPEAL.—Waiver of Error.—Briefs.—Errors assigned, but not discussed in appellant's brief, are waived.   p. 349.

From Superior Court of Marion County (79,091); Vinson Carter, Judge.

Action by George H. Barney and another against The Yazoo Delta Land Company. From a judgment for defendant, the plaintiffs appeal. Affirmed.

Caleb S. Denny, Crate D. Bowen and George L. Denny, for appellants.

Charles W. Smith, John S. Duncan, Henry W. Hornbrook and Albert P. Smith, for appellee.

SPENCER, J.—Action by appellants to recover a commission alleged due them from appellee for the sale of certain

tracts of timber lands. The complaint is in eight paragraphs. The court overruled separate demurrers to each paragraph and issues were joined by general denial to the complaint as a whole. Trial by court without the intervention of a jury, special finding of facts and conclusions of law thereon in favor of appellee. Appellants' motion for a new trial overruled and judgment accordingly.

The errors assigned and not waived are, (1) the conclusions of law, and (2) overruling motion for a new trial. No question is raised as to the sufficiency of the complaint. The material facts as stated by the court in the special findings, are in substance as follows: in 1906, The Yazoo Delta Land Company, a corporation organized under the laws of Indiana, with its main office in the city of Indianapolis, owned about 30,000 acres of timber lands in Washington and Sharkey counties, Mississippi. Appellants, Barney and Hines, are real estate brokers of Memphis, Tenn. Nov. 7, 1906, appellee, by resolution of its directors, authorized appellants to sell said lands on a commission of ten per cent with a proviso that if buyers were found by any of appellee's stockholders or other parties, they were to divide said commission equally with the party furnishing such purchaser. This authority was limited to July 1, 1907. Appellants were to pay all expenses in showing lands to purchasers. They sold 5,693.93 acres for $85,408.80 and received a commission of $8,540.88. This sale was consummated and approved by appellee's directors. On Jan. 24, 1907, appellants were again authorized as sole agents to sell the remainder of said lands. This commission was to extend to July 1, 1907, on certain terms and prices to be fixed by appellee with a proviso for extension of time conditionally. Appellee's directors fixed certain prices and appellants consummated a sale of 10,050.23 acres of this land to the Interstate Cooperage Company, of Cleveland, O., for $15 per acre, which sale appellee's directors approved and paid appellants their commissions. Later appellants were given an option

of the remainder of said lands in event they should find a
buyer. The net cash price for all the lands was to be $10
per acre, and if only portions were sold, higher prices were
named. Appellee authorized appellants in said option to
find a buyer and The Interstate Cooperage Company
was the expected purchaser. Appellants endeavored to in-
duce the Interstate Cooperage Company to purchase the
remainder of said lands, and from time to time made reports
to appellee. Nov. 9, 1907, appellants notified appellee that
the Interstate Cooperage Company, on account of existing
conditions of money matters in the East were not ready to
make the purchase. They asked an extension of their option
as the outcome would depend upon what shape money mat-
ters would take within the next thirty days, but expressed
their confidence in consummating the sale. Feb. 3, 1908,
appellee's directors met and extended appellants' option
to March 1, 1908, and requested appellant, Hines, to notify
appellee in case he could not take the option before March
1, 1908. On Feb. 21, 1908, appellants notified appellee that
the Interstate Cooperage Company had declined to make
the purchase of the lands at that time, but might want to
consummate the deal later in the summer, if unsold. The
writer closed his letter by saying, "if you have other parties
interested in these lands, do not hesitate to take it up with
them, as we do not know of any parties that we could inter-
est in these lands under existing conditions".

On March 3, 1908, the directors of appellee passed a reso-
lution to select agents to sell the remaining lands, expressing
a readiness to sell to any purchaser produced by appellants
who did not have the lands under consideration when they
wanted to take up this matter again. The directors of ap-
pellee granted an option to Messrs. Davis and Steele, and
fixed prices at which they might sell. These men repre-
sented themselves as agents of New York parties and denied
any connections whatever with the Interstate Cooperage
Company. Appellee did nothing to hinder or prevent ap-

pellants from consummating the proposed sale of the remaining lands to the Interstate Cooperage Company, and were ready and willing at all times to convey said lands, should appellants have made a sale. After a reasonable length of time and full opportunity had been given appellants to make said sale, appellee's secretary notified appellants of the action of the directors, but expressed a willingness to consider a purchaser from them on the conditions stated. Appellants then requested appellee to consider no negotiations with the Interstate Cooperage Company except through them as they had reserved the right to consummate any sale with it. Mr. Davis was given a sixty day option at a net price of $10.25 per acre cash, by appellee's directors. A few days later Davis sold his option to the Interstate Cooperage Company which notified appellee it was going to purchase the land. Up until this time the directors did not know Davis was representing the Interstate Cooperage Company, and had acted in good faith in granting the option without intending to avoid in any way paying appellants for any services or commissions. The directors accepted and confirmed the assignment of the option of Davis to the Interstate Cooperage Company on Nov. 9, 1908, and a sale of 15,125.66 acres of land was consummated and confirmed for $155,038.00, and Davis was paid a commission of 25 cents per acre, or $3,781 41. The court found further that appellants were not the producing cause of the sale of this remaining tract of land.

The court stated as its conclusions of law on the special findings, (1) appellants had full and ample opportunity to consummate their proposed sale of said lands to the Interstate Cooperage Company prior to Feb. 21, 1908, (2) appellee had full and complete right to offer said lands for sale either directly or through agents selected by it and on terms acceptable by them, to any person whomsoever, after the receipt of appellants' letter of Feb. 21, 1908, (3) appellants had no right to demand that any future negotiations

for sale of said lands to the Interstate Cooperage Company after Feb. 9, 1908, should be conducted through them, (4) appellants were not the procuring cause of the sale of 15,125.66 acres of said lands to the Interstate Cooperage Company, (5) appellants have no right to claim any compensation for their services for such sale, (6) that appellants are not entitled to recover any sum whatever under this action, and (7) appellee is entitled to recover its costs.

Appellants insist the conclusions of law are erroneous and do not support the special findings. By excepting to the conclusions of law, based on the special finding of facts, they admit, for the purpose of the exception, that the facts were correctly found. *Grant Trust, etc., Co.* v. *Tucker* (1912), 49 Ind. App. 345, 96 N. E. 487; *Warrick* v. *Spry* (1912), 49 Ind. App. 327, 97 N. E. 361; *Kline* v. *Dowling* (1911), 176 Ind. 521, 96 N. E. 579. This insistence raises the question of good faith on the part of appellee upon which this appeal must be decided. Had there been an absence of good faith and a showing of fraud on the part of appellee's directors, then appellants' theory would have been valid, but the court found specially otherwise: "25th. That at the time the Board of Directors of defendant company confirmed said option to Davis, no one of them knew that Mr. Davis represented the Interstate Cooperage Company. 26th. That the Directors of the defendant company acted in good faith in granting such option to Davis, and had no intention in so doing to avoid payment of any compensation for services to Barney and Hines".

Appellants, before commencing this action, made demand in writing upon appellee for the commission claimed by them for procuring a purchaser of said lands. This demand was refused upon the theory that the contract and option which appellee gave appellants on the remainder of the Mississippi lands had expired and at the time appellee's directors confirmed the option granted to Davis, they were acting in good faith and did not know at that time Davis was negotiating

with the Interstate Cooperage Company for the sale of his option, but he represented himself as agent for New York parties. This option was not granted to Davis until March 3, 1908, and after appellants had written appellee on Feb. 21, 1908, saying that they could make no further sales of the Mississippi lands, and that "if you have other parties that are interested in these lands, do not hesitate to take it up with them, as we do not know of any parties that we could interest in these lands under existing conditions". The directors, acting in good faith, declared this letter a revocation of appellants' option, and granted a similar option to Davis as they had a right to do.

The trial court found as a fact that appellee revoked appellants' option March 3, 1908, in good faith and granted said option to Davis not knowing with whom he intended to deal, or that he was employed by the Interstate Cooperage Company. This special finding, being supported by the evidence of several witnesses, is conclusive on appeal. *Warrick* v. *Spry, supra; Zent* v. *Smith* (1882), 83 Ind. 442; *Hamrick* v. *Loring* (1897), 147 Ind. 229, 45 N. E. 107; *Milligan* v. *Owen* (1904), 123 Iowa 285, 98 N. W. 729; *State, ex rel.,* v. *Central States Bridge Co.* (1912), 49 Ind. App. 544, 97 N. E. 803; *Holthouse* v. *State, ex rel.* (1912), 49 Ind. App. 178, 97 N. E. 130; *Jennings* v. *South Whitley Hoop Co.* (1912), 50 Ind. App. 241, 98 N. E. 194; *Geiger* v. *Town of Churubusco* (1912), 50 Ind. App. 685, 98 N E. 77.

"The very essence of a brokerage commission is that it is dependent upon success and that it is in no way dependent upon, or affected by, the amount of work done by the broker. A brokerage commission is earned if the broker, without devoting much, or any, time, to hunting up a customer, succeeds in procuring one; and it is equally true, on the other hand, not only that no commission is earned if a broker is not successful, but a broker is not entitled to any compensation, no matter how much time

he has devoted to finding a customer, provided a customer is not found." *Cadigan* v. *Crabtree* (1901), 179 Mass. 474, 61 N. E. 37, 55 L. R. A. 77, 88 Am. St. 397. See, also, *Rees* v. *Pellow* (1899), 97 Fed. 167, 38 C. C. A. 94; *Kock* v. *Emmerling* (1859), 22 How. 69, 16 L. Ed. 292. The Supreme Court of the United States held in *McGavock* v. *Woodlief* (1857), 20 How. 221, 15 L. Ed. 884, that "The broker must complete the sale; that is, he must find a purchaser in a situation and ready and willing to complete the purchase on the terms agreed on, before he is entitled to his commissions. Then he will be entitled to them, though the vendor refuse to go on and perfect the sale."

If the revocation was in bad faith, it might well be said, that the due performance of their obligation was prevented for the purpose of concluding the sale itself, and saving the stipulated compensation. The court found that appellee acted in good faith and revoked said option in behalf of its own interests after appellants had been given an extension of their option and a reasonable opportunity to consummate a sale with the Interstate Cooperage Company. While such negotiations were unsuccessful it had the absolute right to terminate the option on March 3, 1908. After such revocation appellee was at perfect liberty to resume or continue efforts to sell or grant a new option to another broker even though a sale was consummated with the Interstate Cooperage Company. The agreement with appellants to sell the remainder of said lands was not an ordinary brokerage contract between principal and agent. It was an option for a sale to appellants or to persons designated by them at a fixed price. Nowhere in said option do we find the word "exclusive", and strictly construed, appellants only had an authority to sell the lands at a certain net cash price, providing they found a purchaser. Their compensation depended upon making a sale in excess of the price specified in their option, while the same was in force, regardless of the value of services rendered. They failed to make

such a sale before March 3, 1908, and there was no evidence sufficient to show bad faith in revoking the option.

If a broker produces a proposed purchaser, but no sale is consummated until after the broker's commission has expired, then the principal makes the sale in good faith, 5. the broker is not entitled to his commission, *Fultz* v. *Wimer* (1886), 34 Kan. 576. If the employment is to find a purchaser at a stated price and upon given terms, and the broker has expended his time and performed labor in getting the parties interested, he will be allowed a reasonable length of time in which to complete his labors, unless a definite time has been agreed upon within which he is to produce a purchaser. *Wilson* v. *Dyer* (1895), 12 Ind. App. 320, 39 N. E. 163. Where a stipulated time is mentioned, it becomes the essence of the contract, which must be performed by the broker within the period mentioned. The sale must be made prior to the expiration of the commission. The broker must produce a person not only able, but willing to consummate the purchase within the stipulated time, in order to meet his obligations and entitle him to his commission. *Watson* v. *Brooks* (1884), 11 Or. 271, 3 Pac. 679. In case of an option to buy or sell real estate 6. on or before certain dates, such options will expire at the time mentioned without notice or declaration of forfeiture. *Cummings* v. *Town of Lake Realty Co.* (1893), 86 Wis. 382, 57 N. W. 43. In case the broker fails to find a purchaser within a reasonable time and has opportunity to do so, the principal is at liberty to sell the property at less than the fixed price without incurring liability for commissions. *Henderson* v. *Vincent* (1887), 84 Ala. 99, 100, 4 South. 180. "But in all the cases, under all the varying forms of expression, the fundamental and correct doctrine is, that the duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until that is done his right to commissions does not accrue." *Sib-*

*bald* v. *Bethlehem Iron Co.* (1881), 83 N. Y. 378, 382, 38 Am. Rep. 441..

There is no doubt in this case but that appellants failed to bring appellee and the Interstate Cooperage Company to an agreement. They were unable to agree on March 3, 1908, when appellee's directors revoked appellants' option. Being unable to procure a purchaser upon terms acceptable to themselves and appellee and the Interstate Cooperage Company, appellee was not under further moral or legal obligation to abide by its agreement with appellants and was at full liberty to revoke said option.

"It follows, as a necessary deduction from the established rule, that a broker is never entitled to commissions for unsuccessful efforts. The risk of failure is wholly his. The reward comes only with his success. That is the plain contract and contemplation of the parties. The broker may devote his time and labor, and expend his money with ever so much of devotion to the interest of his employer, and yet if he fails, if without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions. He loses the labor and effort which was staked upon success. * * * He may have introduced to each other parties who otherwise would have never met; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale; he may have planted the very seeds from which others reap the harvest; but all that gives him no claim. It was part of his risk that failing himself, not successful in fulfilling his obligation, others might be left to some extent to avail themselves of the fruit of his labors. As was said in *Wylie* v. *Marine Nat. Bank* [1875], 61 N. Y. 415, in such a case the principal violates no right of the broker by selling to the first party who offers the price asked, and it matters not the sale is to the very party with whom the broker had been negotiating. He failed to find or pro-

duce a purchaser upon the terms prescribed in his employment, and the principal was under no obligation to wait longer that he might make further efforts. The failure, therefore, and its consequences were the risk of the broker only. This, however, must be taken with one important and necessary limitation. If the efforts of the broker are rendered a failure by the fault of the employer; if capriciously he changes his mind after the purchaser, ready and willing, and consenting to the prescribed terms, is produced; or if the latter declines to complete the contract because of some defect of title in the ownership of the seller, some unremoved incumbrance, some defect which is the fault of the latter, then the broker does not lose his commissions. And that upon the familiar principle that no one can avail himself of the nonperformance of a condition precedent, who has himself occasioned its nonperformance. But this limitation is not even an exception to the general rule affecting the broker's right, for it goes on the ground that the broker has done his duty, that he had brought buyer and seller to an agreement, but that the contract is not consummated and fails through the after-fault of the seller. The cases are uniform in this respect." *Sibbald* v. *Bethlehem Iron Co., supra,* 383.

"It is now a well settled doctrine, that in the absence of any usage, or contract expressed or implied, or conduct of the seller preventing a completion of the bargain by the broker, an action by the broker for his commissions will not lie until it is shown that he has effected or procured a sale of the property. It is not enough that the broker has devoted his time, labor or money to the interests of his employer. Unsuccessful efforts, however meritorious, afford no ground of action. Where his acts effect no agreement or contract between his employer and the purchaser, the loss must be his own. He loses his labor and effort which he staked upon success. If no contract, then no reward. His commissions are based upon the contract of sale." *Garcelon*

v. *Tibbetts* (1891), 84 Me. 148, 151, 24 Atl. 797. See, also, *Viaux* v. *Old South Society, etc.* (1882), 133 Mass. 1, 10; *Loud* v. *Hall* (1871), 106 Mass. 404, 407; *Tombs* v. *Alexander* (1869), 101 Mass. 255, 3 Am. Rep. 349; *Kock* v. *Emmerling, supra; Glentworth* v. *Luther* (1855), 21 Barb. 145, 147; *Drury* v. *Newman* (1868), 99 Mass. 256; *Sibbald* v. *Bethlehem Iron Co., supra; Cook* v. *Welch* (1864), 9 Allen (Mass.) 350; *Veazie* v. *Parker* (1881), 72 Me. 443; *Rockwell* v. *Newton* (1877), 44 Conn. 333, 337.

The authorities of the various states support the following general rule which we deem the law of this case. If a real estate broker is granted an option or authority 7. to sell lands for his principal within a given period and is given a full and fair opportunity to consummate a sale thereof, without interference or hindrance of the owner, and he fails to make such a sale within this period or a reasonable extension thereof, after having exercised his best endeavors to that end, the owner may revoke said option and terminate the agency at any time after the expiration of said period, providing the principal acts in good faith. After such a revocation the principal is under no further legal obligation to said broker and he may grant options to other persons or even proceed to sell the same lands to the same person or corporation with whom the broker had been negotiating a sale and failed and under such conditions the first broker is not entitled to any compensation for his efforts. *Sibbald* v. *Bethlehem Iron Co., supra; Stewart* v. *Murray* (1884), 92 Ind. 543, 47 Am. Rep. 167; *Platt* v. *Johr* (1894), 9 Ind. App. 58, 36 N. E. 292; *Learned* v. *McCoy* (1892), 4 Ind. App. 238, 30 N. E. 717; *Wilson* v. *Dyer* (1895), 12 Ind. App. 320, 324, 325, 39 N. E. 163; *Rees* v. *Pellow, supra; Garcelon* v. *Tibbetts, supra; Cadigan* v. *Crabtree, supra; Abbott* v. *Hunt* (1901), 129 N. C. 403, 40 S. E. 119, 120; *Milligan* v. *Owen, supra; Ames* v. *Lamont* (1900), 107 Wis. 531, 83 N. W. 780; *Smith* v. *Lawrence* (1903), 98 Me. 92, 56 Atl. 974; *Fairchild* v. *Cunningham* (1901), 84 Minn. 521, 88 N.

W. 15; *Moore* v. *Cresap* (1899), 109 Iowa 749, 80 N. W. 399; *Frenzer* v. *Lee* (1902), 3 Neb. (unofficial) 69, 90 N. W. 914; *Kifer* v. *Yoder* (1901), 198 Pa. St. 308, 47 Atl. 974.

It remains to consider appellants' motion for a new trial. The only cause thereof presented for the consideration of this court is the refusal to permit appellants' witness, 8. Lewis, to answer certain questions relative to the refusal of the Interstate Cooperage Company to purchase the remainder of the Mississippi lands during the year 1907, because of the conditions of the money markets. When appellants accepted their option they impliedly assumed all such risks and conditions not controlled by themselves or appellee which might arise to prevent a sale. Lewis was not the purchaser of said lands nor did he have authority to bind the buyer, therefore he could not give the reason why a sale was not made between appellants and the Interstate Cooperage Company in 1907, consequently is distinguished from the case of *Childs* v. *Ptomey* (1896), 17 Mont. 502, 43 Pac. 714, where the witness was the purchaser. The court did not commit reversible error in refusing to permit the witness to testify. The other causes, though well settled 9. by numerous decisions of this court, against the contention of appellants, are not discussed in their brief and are therefore regarded as waived. *Pittsburgh, etc., R. Co.* v. *Brown* (1912), 178 Ind. 11, 97 N. E. 145; *Wellington* v. *Reynolds* (1912), 177 Ind. 49, 97 N. E. 155; *Fort Wayne, etc., Traction Co.* v. *Miller* (1911), 48 Ind. App. 633, 96 N. E. 496; *Mesker* v. *Leonard* (1911), 48 Ind. App. 642, 96 N. E. 485; *Duffy* v. *England* (1911), 176 Ind. 575, 96 N. E. 704.

We conclude that under the option involved in this case there can be no recovery for services or commissions. The sole ground upon which appellants could recover compensation is upon the theory said option was revoked in bad faith, and as a mere device to defeat their interest in a sale about to be consummated, which theory they failed to establish.

There being no reversible error in the record, judgment is affirmed.

NOTE.—Reported in 101 N. E. 96. See, also, under (1) 38 Cyc. 1990; (2) 3 Cyc. 360; (3) 19 Cyc. 246; (4) 19 Cyc. 221, 260; (5) 19 Cyc. 194, 254; (6) 39 Cyc. 1236; (7) 19 Cyc. 254; (8) 19 Cyc. 279; (9) 2 Cyc. 1014; 3 Cyc. 388. As to what services are sufficient to entitle real estate broker to commissions on sales, see 139 Am. St. 246; 28 Am. St. 546; 12 Am. St. 589. As to the right of a real estate broker to a commission on a sale made by the owner, see 9 Ann: Cas. 433. As to when a real estate broker is considered as procuring cause of sale or exchange, see 44 L. R. A. 321. On the question of the performance of a contract by a real estate broker to find a purchaser or effect an exchange of his principal's property, see 44 L. R. A. 593. On the broker's right to commissions on sale by owner after stipulated time of agency to customer introduced by broker within the time limited, see 21 L. R. A. (N. S.) 328.